MFA MUTUAL INSURANCE COMPANY *v.*
R. C. KELLER and Jessie Lynette KELLER, His Wife

81-88                                     623 S.W. 2d 841

Supreme Court of Arkansas
Opinion delivered November 16, 1981

*Barrett, Wheatley, Smith & Deacon,* for appellant.

*John Belew* of *Harkey, Walmsley, Belew & Blanken-ship,* for appellees.

*Wright, Lindsey & Jennings,* for *amicus curiae* National Association of Independent Insurers.

ROBERT H. DUDLEY, Justice. Appellant MFA Insurance Company issued a builder's risk insurance policy in the amount of $62,000 on a house owned by appellees, R. C. and Lynette Keller. The house was partially destroyed by fire. Appellees submitted a proof of loss claim for $44,000 but appellant refused to pay that amount because its adjuster's

appraisal was only $20,455. Appellant subsequently offered the sum of $22,750 which was the amount of an appraisal by an independent home builder. Appellees filed suit and, after all amendments to the pleading, sought $44,000 under the terms of the policy, 12 percent statutory penalty, interest and attorney's fees as well as compensatory and punitive damages as a result of appellant's bad faith, fraud and deceit. After the trial had commenced appellees took a voluntary nonsuit on that part of their tort claim alleging bad faith.

At trial there was substantial evidence that appellant's adjuster had made two deceitful statements. The first was when he wrote appellees' attorney that he had attempted to obtain bids from local contractors but they would not bid. The second was when he denied that one of his appraisers, Steve Duncan, told him that it would take between $40,000 and $50,000 to repair the house.

The jury reached a verdict in favor of appellees and the court entered judgment for $44,000 on the contract of insurance, $5,280 as 12 percent penalty, $15,000 for attorney's fees, $75,000 for compensatory damages and $124,000 for punitive damages with interest on each of these amounts at the rate of 10 percent per annum until paid.

We affirm, without discussion, the award based on the insurance contract, penalty, interest and attorney's fees. Ark. Stat. Ann. § 66-3238 (Repl. 1980) applies whenever an insured prevails in a controversy with his insurance company and actually obtains a money judgment for the amount prayed. *Southern Farm Bureau Casualty Insurance Co.* v. *Gooding*, 263 Ark. 435, 565 S.W. 2d 421 (1978).

We reverse the awards for compensatory damages and punitive damages which were based upon the theory of fraud and deceit. We have held that an insurance company might face tort liability for bad faith in addition to its contractual liabilities. *Findley* v. *Time Insurance Co.*, 264 Ark. 647, 573 S.W. 2d 908 (1978). We do not consider the tort of bad faith, for appellees dismissed their claim on this allegation and obtained this judgment on the tort of fraud and deceit. The action for deceit is of very ancient origin,

with one form of the action known to exist as early as 1201. Prosser, *Law of Torts,* p. 685 (4th Ed. 1971). We have long recognized the common law tort of deceit. See *Ray Dodge, Inc.* v. *Moore,* 251 Ark. 1036, 479 S.W. 2d 518 (1972). We uphold the Court of Appeals' ruling in *Sturgeon* v. *American Family Life Assurance Co.,* 266 Ark. 1040, 589 S.W. 2d 207 (Ark. App. 1979), that deceit is a recognized cause of action against an insurer. We are not academically concerned with the vagueness of the word "fraud." See Prosser, Id. at 684. In this case we treat that word as surplusage in an action for deceit.

In *Beam* v. *Monsanto Co., Inc.,* 259 Ark. 253, at 264, 532 S.W. 2d 175 (1976), we adopted from Prosser, Id. at 685, a statement of the elements of the tort cause of action in deceit as follows:

> 1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.
> 2. Knowledge or belief on the part of the defendant that the representation is false — or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of 'scienter.'
> 3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.
> 4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.
> 5. Damage to the plaintiff, resulting from such reliance.

See also, *Restatement (Second) of Torts,* Chapter 22 (1977) and 8 Va. L. Rev. 749 (1930).

The case at bar was tried before a jury. To determine the sufficiency of evidence on appeal from a jury trial we review the evidence in the light most favorable to the appellee and affirm if there is any substantial evidence to support the

finding of the jury. *Thrifty Rent-A-Car* v. *Jeffrey,* 257 Ark. 904, 520 S.W. 2d 304 (1975).

Using that standard of review, we hold there is substantial evidence to support the finding that appellant made false representations of material facts. There is substantial evidence to support the finding that the misrepresentations were knowingly made and they were made with the intention of inducing the appellees to act on them, that is, they were made with the intent to deceive appellees about the true cost of repairing their house. However, there is absolutely no evidence that appellees relied on appellant's misrepresentations. In fact, they knew the statements were false. The appellees were induced neither to act or not to act by reason of appellant's misrepresentations. The maker of a fraudulent misrepresentation is not liable to one who does not rely on that misrepresentation. This is a lack of causal relation in its simplest form. No damage resulted from reliance upon appellant's misrepresentations. The fourth and fifth elements of the tort, reliance and resulting damages, are clearly absent. Hence the appellees are barred from recovery on the deceit theory.

The facts of the case at bar are unlike the facts in the case of *Sturgeon* v. *American Family Life Assurance Co.,* supra. There Sturgeon bought a cancer insurance policy upon assurances by the insurance company that the policy would pay if he were diagnosed as having cancer. He relied on that representation and purchased a policy. He developed cancer and yet coverage was denied. There was a misrepresentation upon which Sturgeon relied and he was damaged. All of the elements of the common law tort of deceit were stated.

The appellees contend that they are within the limits of the deceit theory expressed in *Sturgeon* because appellant's policy represented that it would restore the house to its former condition and that, in fact, appellant never intended to restore the house. This argument is based upon the erroneous premise that appellant was obliged to restore the house. The policy provides that appellant will pay the "amount" it would "cost to repair or replace the property with material of like kind and quality." Appellant had no

obligation to repair, rebuild, restore or replace. Its obligation was to pay the amount sufficient to restore the house.

We do not reject the possibility that an insurer may be liable in tort for deceit and also liable under the penalty statute. We leave that question for the future.

Affirmed as to the amount of loss, penalty, interest and attorney's fees. Reversed as to compensatory and punitive damages as a result of the tort of ·deceit. Appellees are awarded a $500 attorney fee for supplemental abstracting and their motion for the taxing of costs is granted.