Herbert L. STORTHZ and Charlotte M. STORTHZ
*v.* COMMERCIAL NATIONAL BANK

81-236                                    631 S.W.2d 613

Supreme Court of Arkansas
Opinion delivered April 19, 1982

*R. J. Brown, P.A.*, for appellants.

*Haley & Young, P.A.*, by: *Jack Young* and *Martha L. Strother*, for appellee.

JEFF STARLING, Special Chief Justice. This case is on appeal to this court pursuant to Rule 29. This is a suit filed in circuit court by appellee to secure a judgment against the appellants on two promissory notes. The appellants filed an answer and a counterclaim. Prior to the scheduled trial by jury, the appellee filed a motion for summary judgment which was granted by the trial court thereby affirming the relief prayed for in the appellee's complaint and dismissing the counterclaim of the appellants.

In April, 1974, appellants obtained an agreement from First Federal Savings and Loan Association of Little Rock to advance to appellants the sum of $459,000.00 for the construction of the Renaissance Condominium project.

In July, 1974, First Federal refused, for internal reasons, to make the loan. Appellants' attorney made demand upon First Federal to honor its commitment for the loan. In an effort to avoid litigation, Charles Johnston, President of First Federal, arranged with appellee for appellee to provide appellants with the financing for the project.

Appellee subsequently made the loan to appellants based upon an oral commitment from Mr. Johnston whereby he agreed that he would personally commit a limited amount of collateral to appellee should there be a

default on the part of appellants and any loss to the bank on its loan to appellants.

On August 14, 1974, appellee loaned appellants $459,000.00 which was evidenced by appellants' promissory note with interest thereon at ten percent (10%) per annum, payable semi-annually. This promissory note was secured by a construction mortgage on the condominium project. This promissory note was extended on several occasions with the final extension becoming due on August 9, 1978.

In June, 1976, appellants obtained from appellee an additional loan in the amount of $83,000.00 for the purpose of completing the interior decorations of the project units. This indebtedness was also evidenced by appellants' promissory note with interest at the rate of ten percent (10%) per annum. This promissory note was also extended on several occasions with the final extension also becoming due on August 9, 1978.

On October 25, 1978, Mr. Johnston, as trustee, assigned to appellee a promissory note in the amount of $108,666.67 secured by a lien retained in a warranty deed. Subsequently, a $49,000.00 certificate of deposit was substituted by Mr. Johnston for the above mentioned promissory note. Thereafter, on August 6, 1980, a $27,000.00 cashier's check purchased by Mr. Johnston and made payable to appellee was substituted for the $49,000.00 certificate of deposit.

Appellants were unaware of the personal verbal commitment between Mr. Johnston and the appellee and the amount of the collateral pledged and substituted until the fall of 1978.

Prior to the two promissory notes becoming due on August 9, 1978, appellants attempted several accomodations with appellee, namely, urging appellee to accept the project units, which were the mortgaged collateral, in cancellation of the indebtedness owed by appellants to appellee. Appellee refused.

On August 9, 1978, the amounts due and owing pursuant to the two promissory notes were unpaid and in default.

On January 16, 1979, appellee filed suit in circuit court seeking judgment against appellants on the two promissory notes in the amount of $151,561.91, together with accrued interest from and after August 9, 1978, until paid, costs and attorneys' fees.

Appellants filed their verified answer and counterclaim denying certain material allegations in the appellee's complaint, raising affirmative defenses, alleging deceit and seeking judgment against appellee in the sum of $350,000.00 and punitive damages in the sum of $700,000.00 and for penalties as provided by federal law for usurious transactions.

On or about July 31, 1980, appellee cashed the $27,000.00 cashier's check of Mr. Johnston.

The case was set for jury trial on February 10, 1981. On February 2, 1981, appellee filed its motion for summary judgment which was submitted on the pleadings, depositions, affidavit of Charles Johnston and brief of the appellee.

On February 9, 1981, the motion for summary judgment was heard by the trial court. On the same day, appellants filed a first amended answer and counterclaim alleging that the $27,000.00 collateral received by appellee from Mr. Johnston should be credited against appellants' indebtedness.

The trial court granted appellee's motion for summary judgment in the amount of $151,561.91 with accrued interest from August 9, 1978, until paid, as prayed for in appellee's complaint. The trial court specifically found that the $27,000.00 collateral received by appellee from Mr. Johnston was not a credit against the indebtedness owed by appellants to appellee. From a granting of that motion, appellants bring this appeal.

Appellants argue the following points for reversal on appeal to this court.

I. The trial court erred in granting summary judgment because genuine issues of material fact remain to be determined by the jury:

A. Whether the bank charged or collected usurious interest so that the penalty of federal law should be applied.

B. Whether the bank applied the credit from the collateral provided by Charles Johnston correctly to appellants' note.

C. The amount that the defendants owe to the bank.

II. The trial court erred in dismissing the counterclaim of the defendants against the bank because the counterclaim states a cause of action for deceit or misrepresentation through concealment of the guaranty of Charles Johnston or First Federal Savings and Loan, raising material issues of fact which can only be decided by the jury.

Each point shall hereafter be discussed.

It is well-settled that summary judgment should be granted only when a review of the pleadings, depositions and other filings reveal that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Arkansas Rules of Civil Procedure.

First, appellants contend that appellees' collection of interest on a semi-annual basis pursuant to a promissory note "with interest from date until maturity at the rate of ten percent per annum . . payable semi-annually" is usury in that such collection allows the appellee to utilize appellants' interest payment money for six months and that the income appellee earns on the mid-year payment

of interest constitutes additional interest thereby making the note usurious.

It is clear from a reading of the cases that a note obligation at maximum interest requiring quarterly or semi-annual payments of interest, with or without principal, does not render the transaction usurious. *Pellerin Laundry Machinery Sales Company* v. *Hogue*, 219 F. Supp. 629 (D.C. W.D. Ark. 1963). One simply needs to reflect upon the common everyday situation in which a debtor borrows money for six months at maximum interest. If, at the end of the six month period, the debtor cannot repay the principal but is allowed to pay only the interest and thereby renew the note for the principal for an additional six months at maximum interest, such a transaction clearly does not constitute usury.

Next, appellants argue that appellee's alleged use of 360 days as the basis year in computing simple interest is usury. It is now settled that the use of a 360 day basis year in computing simple interest is one of the correct methods of computing simple interest and is not usury. *Martins Mobile Homes* v. *Moore*, 269 Ark. 375, 601 S.W.2d 868 (1980).

Thirdly, appellants argue that the $27,000.00 received by appellee from Charles Johnston, pursuant to his oral agreement to commit a limited amount of personal collateral to appellee in case of appellants' default, should have been credited against the indebtedness of the appellants.

It is not necessary to determine whether or not the $27,000.00 collateral received by appellee should have been credited to the indebtedness of the appellants under the facts of this case insofar as appellee, at oral argument before this court, conceded that it would credit the $27,000.00 to the indebtedness of the appellants. Therefore, we would remand to the trial court the proper allocation of this credit. This mathematical computation will necessarily resolve appellant's next point regarding the amount that the appellants' owe to the appellee.

As their final point, appellants urge reversal in that the trial court dismissed that portion of appellants counter-claim alleging a tort cause of action in deceit.

In *MFA Mutual Insurance Company v. Keller,* 274 Ark. 281, 623 S.W.2d 841 (1981), this court specifically set forth the five elements of the tort cause of action in deceit. Proof of each element is necessary. The elements are as follows:

1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

2. Knowledge or belief on the part of the defendant that the representation is false — or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of "scienter".

3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the mis-representation.

4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

5. Damage to the plaintiff, resulting from such reliance.

The threshold requirement of the first element set forth above is that there must be a "false representation". Here, appellee made no representation at all, much less one that was false. Thus, it is apparent from the record before us that proof of the first element in the tort cause of action in deceit is clearly absent. Furthermore, under the facts of this case, we find that appellee had no duty to disclose the oral commitment between Mr. Johnston and appellee.

In conjunction with this final point, appellants further argue that appellee had a duty to accept the collat-

eral of the appellants (the condominium units) in lieu of pursuing payment on the promissory notes. However, appellants cite no authority nor are we aware of any such authority which would contradict the well-established principle of law that the holder of a note has no duty to accept the collateral pledged absent agreement to do so.

While it is true that upon motion for summary judgment the trial court should review the record in the light most favorable to the party resisting the motion and resolve any doubts or inferences against the movant, where the movant makes a *prima facie* showing of entitlement to summary judgment the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact. *Hughes Western World, Inc.* v. *Westmoor Manufacturing Company,* 269 Ark. 300, 601 S.W.2d 826 (1980); *Coffelt* v. *Arkansas Power & Light Company,* 248 Ark. 313, 414 S.W. 2d 881 (1970). Here, we cannot say that there was a genuine issue as to any material fact or that the trial court erred in granting appellee's motion for summary judgment. In respect to the $27,000.00 credit to the indebtedness of the appellants as conceded by the appellee, this case is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed as modified and remanded.

GEORGE STEELE, Special Justice, joins in the opinion.

ADKISSON, C.J., and HAYS, J., not participating.