**DUVAL COUNTY RANCH COMPANY, et al., Appellants,**

v.

**Grady E. WOOLDRIDGE, Appellee.**

**No. 13577.**

Court of Appeals of Texas, Austin.

Feb. 15, 1984.

Rehearing Denied March 28, 1984.

Pat Maloney, Law Offices of Pat Maloney, P.C., San Antonio, for appellants.

John T. Anderson, Graves, Dougherty, Hearon & Moody, Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE, JJ.

EARL W. SMITH, Justice.

This is a venue case. In 1978, plaintiff Grady E. Wooldridge sued defendants Perry Horine, Clinton Manges, and Duval County Ranch Company, a corporation, in the District Court of Williamson County. Each defendant filed a plea of privilege, to which controverting affidavits were filed by plaintiff. The trial court overruled all pleas of privilege. For clarity, the parties are referred to hereafter as "Wooldridge", "Horine", "Manges" and "DCRC". Manges and DCRC appeal from the order of the trial court overruling their pleas. Horine did not appeal. We affirm the judgment of the trial court.

## PROCEDURAL BACKGROUND

In Wooldridge's petition, he alleges a cause of action against Horine based upon two promissory notes, executed by Horine and payable to Wooldridge. He further asserts a cause of action of fraud against Horine, Manges and DCRC. In his controverting pleas as to the plea of privilege filed by all defendants, Wooldridge set out his petition in its entirety. As to all defendants he relies upon allegations of fraud committed in the county of suit. Tex.Rev. Civ.Stat.Ann. art. 1995, subd. 7 (1964). In addition, as to Horine, he pleaded that the notes sued upon were payable in Williamson County. *Id.* at subd. 5. As to DCRC and Horine, he also relied upon subdivisions 23 and 29a of Article 1995.

Prior to the hearing on the plea of privilege, Horine filed a cross-action against Manges seeking indemnity. Manges filed a general denial to Horine's cross-action without interposing a plea of privilege. Thus, regardless of our disposition of the appeal of Manges and DCRC, Wooldridge's cause of action against Horine, and Horine's cross-action against Manges would remain pending in Williamson County. None of the parties were residents of Williamson County.

## CONTENTIONS OF THE PARTIES

Manges and DCRC contend that the trial court erred in overruling their pleas because: (1) Wooldridge failed to prove by a preponderance of the evidence the requisite element of present intent under a cause of action for fraud; (2) Wooldridge failed to prove by a preponderance of the evidence that a fraudulent act was committed in the county of suit and alternatively, there is no evidence of agency so that the acts of Horine cannot be attributed to Manges and DCRC; (3) as a matter of law, subdivision 29a cannot apply in absence of any evidence that Manges and DCRC are necessary parties; and (4) venue cannot be established under subdivision 23.

Wooldridge replies that there is ample evidence to support the trial court's findings that Horine made the alleged false representation to Wooldridge in Williamson County and that when he did so, he was acting as agent of Manges and DCRC; that the record contains sufficient evidence of intent; that the trial court properly overruled the pleas because Manges and DCRC did not deny under oath the allegation of Wooldridge's petition that Horine was acting as their agent when he made the false representations; that Manges and DCRC are necessary parties to Wooldridge's cause against Horine; that venue lies against them under subdivision 29a of Article 1995; that venue lies against DCRC under subdivision 23 of Article 1995 because a part of the cause of action against the corporation, DCRC, arose in the county of suit; and that Manges waived his plea of privilege by entering an unqualified general appearance to the cross-action of Horine

against him, without interposing a plea of privilege. We overrule the points of error of Manges and DCRC.

## PETITION AND CONTROVERTING PLEA OF WOOLDRIDGE

In his controverting plea, Wooldridge sets out his petition *haec verba*. As to Horine, he pleaded that Horine executed two promissory notes payable to Wooldridge at his office in Round Rock, Williamson County, that there was failure to pay on demand, and a refusal by Horine to pay.

As to Horine, Manges and DCRC, Wooldridge alleges that: D & W Enterprises, Inc., of which he was president, was engaged in construction work in Duval County pursuant to a written contract with DCRC; in September, 1976 DCRC owed him $30,000.00 for construction work completed under the contract which DCRC was unable to pay; Horine, an agent for Manges and DCRC, told him that arrangements could be made for the payment; Horine requested that Wooldridge borrow $69,000.00 from the Groos National Bank (Bank) in San Antonio, and that Wooldridge then loan such sum to Horine, Manges, and DCRC, who would apply part of the proceeds to satisfy the claim of D & W Enterprises (D & W) against DCRC; Wooldridge told Horine that he would not be able to pay the bank loan unless Horine, Manges and DCRC tendered full payment of their loan from Wooldridge before the bank loan became due; and Horine promised that he, Manges and DCRC would tender the $69,000.00 to Wooldridge before the bank loan became due.

Wooldridge alleged further that he relied on the promise of Horine as agent for Manges and DCRC, obtained the loan from the bank and loaned the $69,000.00 to Horine, Manges and DCRC. Later, DCRC again owed D & W approximately $30,000.00 for completed construction work; DCRC could not pay; Horine requested that Wooldridge borrow an additional $30,000.00 from the bank, lend such amount to Horine, Manges and DCRC who would use same to satisfy D & W's claim against

DCRC. The same promises as to reimbursement of the loan to Wooldridge were made by Horine, and relying on the promises, Wooldridge obtained the loan and then lent the money to Horine, Manges and DCRC. Both notes executed by Wooldridge to the bank were renewed several times.

Wooldridge alleged that "[d]efendants' [Horine's, Manges' and DCRC's] promises to tender full payment on their loans before [p]laintiff's [Wooldridge's] loans at the Groos National Bank because [sic] due were false and misleading to [p]laintiff, and were made by [d]efendants with the intention of not fulfilling said promises." He further alleged that the bank notes became due, but defendants have failed and refused to tender $99,000.00 in payment of their loans from Wooldridge; that the promises made to him were material, and were relied upon by him; that these promises were willfully made with full knowledge that same were false and were made with intention that Wooldridge be injured thereby; and that judgment had been taken against him by the bank, as a result of which his business and credit had been injured. Wooldridge also sought exemplary damages and attorney's fees.

In his controverting plea, Wooldridge alleges: that defendants committed fraud upon him in Williamson County and thus, venue lies as to all defendants under subdivision 7 of Article 1995; that DCRC is a Texas corporation and the cause of action against it arose in Williamson County because DCRC, acting by and through its agent, committed acts of fraud in Williamson County and as such, venue lies in said county under subdivision 23 of Article 1995; that defendant Horine committed fraud in Williamson County and defendants DCRC and Manges are necessary parties to his suit against Horine and for that reason he is entitled to maintain suit in Williamson County against DCRC and Manges.

### EVIDENCE UNDER ALL POINTS OF ERROR

As in many plea of privilege hearings, the evidence is somewhat skeletal, but it does establish that on May 25, 1976, Wool-dridge and Horine executed a contract for the construction by Wooldridge of a bunkhouse and cookshack (or dining room) for DCRC, a corporation, on its ranch. Manges was the sole stockholder and owner of DCRC at all times incident to this suit. In pertinent part, the contract reads:

THAT PERRY HORINE, ... *as Agent for Duval County Ranch Company*, a Texas corporation, ... known hereinafter as "HORINE"; and D & W ENTERPRISES, INC., ... known hereinafter as "D & W", and for such:

#### WITNESSETH:

THAT WHEREAS, Horine *as Agent* has certain building projects and certain other construction jobs to perform for Duval County Ranch Company, which fact is acknowledged and attested to by the parties hereto;

THAT D & W is in the business of construction of projects of various nature, including the types of projects so being undertaken by Horine for DCRC; and

THAT Horine is desirous of contracting certain phases or practices of such jobs he may have to perform for said DCRC with D & W;

NOW, THEREFORE, IT IS AGREED:

THAT Horine does contract with D & W, and by these presents a formal Agreement is made to contract with D & W, for the construction of a Bunk House and Cook Shack (or Dining Room), as per plans and specifications previously drawn and loosely interpreted, copies of which plans and specifications are in the hands of the parties hereto, subject to the following terms and conditions, to-wit:

1. The total consideration for the construction as aforementioned shall be the actual wholesale cost to D & W for labor and materials, including sub-contracts as approved by Horine when D & W does not and/or cannot supply sufficient expertise or workmen to perform a practice in question, PLUS FIFTEEN (15%) PERCENT; provided, however, the following

limitations to certified cost by D & W to Horine shall apply: ....

2. D & W shall submit to Horine not earlier than the 8th of each month following commencement of construction, a detailed billing of those items which have been completed by D & W for the account of Horine or DCRC on the above described work project. Horine shall then arrange for funds to be paid or transferred to the account of D & W in a bank or banks of D & W's choice as soon after said billing is submitted to Horine as is practicable; it being the intent of the parties hereto that D & W shall have its cost reimbursement by the 10th of the month, if possible. The FIFTEEN (15%) PERCENT profit shall be paid with the final drawing or billing, ....

3. Approval of changes or addenda to plans or specifications for the work project covered hereunder shall be given by Horine, Clinton Manges, Chick Manges, Ruth Manges, or other officer, employee or agent of DCRC so designated in the future; and shall be deemed to have been properly authorized when said approval has been given to Gonzalo Benavides, superintednent [sic] of the work-project, or to Grady Wooldridge, President of D & W. Other suggestions for changes, modifications, or otherwise, shall be referred to Horine or to those officers, employees, or agents of DCRC as enumerated above prior to any change actually having been made in original plans and specifications as set out at the commencement of the work-project.

\* \* \* \* \* \*

5. D & W shall · supply Horine & DCRC with an affidavit that all work shall have been completed and that all bills for labor and materials on the job shall have been paid for by D & W at the time of final funding and closing of the contract agreement contained herein. (emphasis added)

The contract was signed by Perry Horine, "agent for DCRC", and by D & W Enterprises, Inc., by Grady Wooldridge, president.

On deposition, Manges testified that he had met Wooldridge "several years ago"; that Wooldridge was with Horine when he met him; and that in addition to being sole owner of DCRC, he owned more than a majority interest in the Groos National Bank of San Antonio. He testified that Horine was doing work for him—"they" were building an office building for him and built a bunkhouse and a cookshack for him.

Wooldridge testified as follows. When he executed the contract, Horine was acting as agent for Manges and DCRC. He began the construction work, but never received any of the payments called for by the contract. He had a conversation with Horine about payment of sums due him. Horine told him "they" were in a cash flow bind situation and told them that if Wooldridge would execute a note to the Groos Bank, the money "would go to them to pay our debts." So, on September 27, 1976, with Horine present, appellee executed a note payable to the bank in the sum of $69,000.00. From the loan he received, he gave $59,000.00 to Horine for payments (to suppliers, subcontractors, etc.) "on the work I was doing for ... construction on Clinton Manges, Perry Horine, Duval County Ranch." Horine gave the money to Manges. Wooldridge did not owe Manges or Horine any money when he got the loan from the bank—to the contrary, Horine and Manges owed Wooldridge's Company, D & W, approximately $30,000.00 for work done by Wooldridge on the DCRC ranch.

For the same reasons, and based upon additional and identical promises made by Horine, Wooldridge executed another note for $30,000.00 to Groos Bank, and gave the money to Horine to pay bills for construction done by Wooldridge on the ranch. At this time, he had not been paid anything under the contract, and was owed $73,-000.00 to $76,000.00. Again, Horine said that as soon as "they" got their cash flow situation "done," they would pay Wooldridge.

As to each of the notes executed by Wooldridge, payable to the Bank, Horine

promised that Wooldridge would be repaid the loans in full before the notes became due at the bank. Wooldridge said he would not have executed any of the notes but for such promises, because "I don't have the money, myself, and it was their obligation under their contract to D & W Enterprises and Grady Wooldridge."

After Wooldridge executed the notes to Groos Bank, he and Horine met with Manges at the courthouse steps in Seguin (where Manges was involved in other litigation). Wooldridge said that "Horine introduced me to Clinton again in respect to me meeting him for asking him for payment, and he [Manges] acknowledged that as soon as they got out of litigation that they would have the money, that they were somewhat [sic] being garnisheed of their oil runs and gas runs, and as soon as they got it that day or within the next few days out of that court [at Seguin] that the money would be [paid] to me on the notes that I executed at Groos bank." Wooldridge testified that Manges said he would repay him for the notes so he could pay the notes before they became due. He said that Manges never denied his obligations to him. Neither Manges nor Horine testified in person at the plea of privilege hearing; nor did they appear in person.

On December 9, 1977, Wooldridge executed a note to the Bank in the amount of $76,681.97 in renewal of previous notes. Unable to pay the notes, and not having received any payment from Horine, Manges or DCRC, Wooldridge was sued by the Bank. The Bank obtained a judgment against him for approximately $80,000.00. He talked to Horine about the judgment and though Wooldridge made demand several times, Horine, Manges and DCRC have never repaid him for the money he borrowed from the Bank. Wooldridge has had trouble obtaining credit because of the judgment.

The only payments made on the bank notes were made by Wooldridge. The loans were prearranged by Horine and Manges, before Wooldridge went to the Bank, in such form and manner that *only* Wooldridge was liable to the Bank on the notes. Some payments due under the con-

struction contract were made from these funds. Horine told Wooldridge that he had authority on behalf of Manges and DCRC to set up the "arrangements." Of the money he borrowed at the Bank and gave to Horine, $40,000.00 was paid to another contractor for paving work on the Duval County Ranch.

Thus went this weird transaction between Wooldridge, Horine (as agent for DCRC) and Manges. In summary, plaintiff proved that Horine was acting for DCRC and Manges. Manges admitted that Horine was doing work for him.

The construction contract was executed by Horine as agent for DCRC. In the absence of a special denial verified under Tex.R.Civ.P.Ann. 93 (1979), DCRC, wholly owned by Manges, and Manges individually, cannot be heard to deny Horine's authority to execute the contract as agent for DCRC. The evidence is clear and uncontradicted that DCRC owed money to Wooldridge for the construction work. Rather than honor the contract by making regular monthly payments to Wooldridge, Horine induced Wooldridge to borrow the money at the Bank (in which Manges owned controlling interest), prearranged loans and took the proceeds of the loan to deliver to DCRC and/or Manges. Despite assurances by both Manges and Horine that they would repay Wooldridge the amount of the Bank loans before they became due, they failed and refused to do so, thereby causing a judgment to be taken by the Bank against Wooldridge, as a result of which he was damaged in the amount of the judgment plus damage to his credit. Wooldridge's reliance on the promises of Horine and Manges to repay him was well established by the evidence.

## POINTS OF ERROR ONE AND TWO OF MANGES AND DCRC

Manges and DCRC contend that Wooldridge failed to prove, by a preponderance of the evidence, (1) the requisite element of present intent in the cause of action for fraud and (2) the requisite element of a fraudulent act within Williamson County

and alternatively, they assert that there is *no* evidence of agency so that acts of Horine cannot be attributed to Manges and DCRC. Both points are briefed together and will be so addressed.

Manges and DCRC correctly state that to sustain venue under subdivision 7 of Article 1995, three facts must be proved by Wooldridge by a preponderance of the evidence, to-wit: (1) that fraud occurred, (2) that it was committed by the defendant or by one for whose acts the defendant is legally responsible, and (3) that the fraud occurred in the county of suit. We have no quarrel with their assertion that the elements of fraud are (1) that a material misrepresentation was made; (2) that it was false; (3) when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) it was made with the intention that it should be acted upon by a party; and (5) the party acted upon it and was injured as a consequence. *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183 (Tex.1977).

Manges and DCRC argue that Wooldridge only proved a breach of contract, not fraud, in that "nothing substantiates the claim [of Wooldridge] that the initial promise was made with the intent, purpose or design to deceive." The point of error in this respect is that Wooldridge "failed to prove by a preponderance of the evidence the requisite element of present intent under a cause of action for misrepresentation." In point two, Manges and DCRC state that Wooldridge "failed to prove by a preponderance of the evidence the requisite element of a fraudulent act [committed] within Williamson County" and "alternatively, there is no evidence of agency so that acts of Horine cannot be attributed to Manges and DCRC." We disagree and overrule points of error one and two.

We hold that there is some, indeed sufficient, evidence for the trial court to find that Horine, in his negotiations with Wooldridge and in inducing him, by promises of reimbursement, to borrow the money from the Bank, was acting as agent for Manges and DCRC. We note that, as to

agency, the point of error of Manges and DCRC is that there is "no evidence of agency."

In considering a "no evidence" point, the reviewing court must reject all evidence contrary to the findings of the trier of the fact and consider only the facts and circumstances which tend to support those findings. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950). In reviewing factual sufficiency points of error, the court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Since Manges and DCRC had received the fruits of Horine's inducement by false promises, they cannot be heard to deny that Horine was their agent. *Plains Cotton Cooperative Assn. v. Wolf*, 553 S.W.2d 800, 804 (Tex.Civ.App.1977, writ ref'd n.r.e.); *American Empire Life Insurance Company v. Long*, 344 S.W.2d 513, 517 (Tex.Civ.App.1961, writ ref'd n.r. e.).

We further hold that Horine's inducement of Wooldridge to borrow the money and his promises to reimburse were made in Williamson County; that there is sufficient evidence for the trial court to find: that such representations and promises were false and fraudulent, made by Horine as agent for DCRC and Manges who were responsible (as admitted by Manges at Seguin) for Horine's acts; that the inducement and promises made by Horine were material; were known to be false by Horine, and were made with intentions that they be acted upon by Wooldridge, who relied on same to his injury.

When misrepresentations involve a promise to perform an act in the future, the plaintiff must prove that, at the time the promise was made, the defendants did not intend to perform. Proof of the intent element is almost always made by circumstantial evidence and is "peculiarly a ques-

tion for the trier of facts." *Pulchny v. Pulchny*, 555 S.W.2d 543, 546 (Tex.Civ. App.1977, no writ). Such intent (not to perform as promised) is usually not susceptible of direct proof because it depends on determining the "[h]idden purposes of the mind." *Id.* at 545, quoting 37 Am.Jur.2d, Fraud and Deceit, § 477 (1968). As stated in *Pulchny, supra*, to determine intent the court looks to the circumstances under which the promise was made, the relationships and interests of the parties, the nature of their transaction, the failure to perform and the nature of efforts of the promissor to perform.

■ Manges and DCRC, in their brief, argue "there is simply no evidence that a misrepresentation of an existing or past fact occurred." Where the defendant denies having made the promise at all, that circumstance along with failure to perform justifies a finding of fraudulent intent. *Stone v. Williams*, 358 S.W.2d 151, 155 (Tex.Civ.App.1962, writ ref'd n.r.e.).

■ Here, Manges in his deposition denied receiving any money from Wooldridge's loans, and stated that he did not remember seeing Wooldridge in Seguin, where Wooldridge testified that Manges acknowledged the indebtedness and promised payment. Horine and Manges refused to honor their promises to reimburse Wooldridge before his loan became due, and continued to dishonor their promises after suit was brought by the Bank and judgment taken against Wooldridge. The very nature of the transaction whereby Wooldridge was induced to borrow the money at Groos Bank is some evidence, along with the above facts, to show fraudulent intent.

In their third and fourth points of error, Manges and DCRC contend that venue does not lie against them under subdivision 29a of Article 1995, which reads:

29a. Two or more defendants.— Whenever there are two or more defendants in any suit brought in any county in this State and such suit is lawfully maintainable therein under the provisions of Article 1995 as to any of such defendants, then such suit may be maintained in such county against any and all necessary parties thereto.

or under subdivision 23 of Article 1995 which reads, in pertinent part:

23. Corporations and associations.— Suits against a private corporation, association, or joint stock company may be brought in the county in which its principal office is situated; or in the county in which the cause of action or part thereof arose; . . . .

Manges and DCRC argue first, that since there was *no* sufficient probative evidence that Horine was an authorized agent, joinder of Manges and DCRC is unwarranted. *Moreland v. Leslie*, 140 Tex. 170, 166 S.W.2d 902 (1942). Since we hold that the evidence is sufficient to prove agency, and since Manges and DCRC cannot be heard to deny same, such argument must be rejected. Second, Manges and DCRC say that even if agency is established, there is no proof that Manges and DCRC are necessary parties; hence venue does not lie under subdivision 29a. We do not agree. The venue facts which must be proved by Wooldridge are: (1) that there are two or more defendants in the suit; (2) that the lawsuit is maintainable, where suit is brought under Article 1995, as to one of the defendants; and (3) that the party claiming the privilege is a necessary party to the suit.

There were three party defendants in this cause: Horine, Manges and DCRC. Venue against Horine was proper in Williamson County under subdivision 5 of Article 1995 (suit on notes executed by Horine, payable in Williamson County) and alternatively under subdivision 7 (fraud). Wooldridge proved the fraudulent representations of Horine and that they were made in Williamson County as noted herein. Thus a *prima facie* action for fraud by Horine was proved by Wooldridge. Wooldridge's petition also alleges fraud committed by Manges and DCRC and he seeks a joint and several judgment for his damages against Horine, Manges and DCRC.

■ A necessary party is one whose joinder is required to afford the plaintiff

the complete relief to which he is entitled against the defendant who is properly suable in that county. *Ladner v. Reliance Corp.,* 156 Tex. 158, 293 S.W.2d 758 (1956); *Union Bus Lines v. Byrd,* 142 Tex. 257, 177 S.W.2d 774 (1944); *National Standard Insurance Co. v. Beard,* 569 S.W.2d 52 (Tex.Civ.App.1978, writ dism'd); *Orange Associates, Inc. v. Albright,* 548 S.W.2d 806 (Tex.Civ.App.1977, writ dism'd). We hold that Manges and DCRC are necessary parties under subdivision 29a of Article 1995.

Venue also lies against DCRC under subdivision 23 of Article 1995. DCRC's corporate status is not in issue, since there is no denial by DCRC of the plaintiff's allegation that DCRC is a Texas corporation. To the contrary, Manges admitted in his deposition that DCRC was a Texas corporation.

Under subdivision 23 the venue facts which must be proved by plaintiff are: (1) that DCRC is a corporation; (2) that Wooldridge has a cause of action against the corporation; and (3) that the cause of action or a part thereof arose in Williamson County.

Without repeating the evidence, we hold that Wooldridge pleaded and proved a cause of action against DCRC; that its corporate status was established; that he had a cause of action against DCRC; and that the fraudulent promises of the agent, Horine, were made in Williamson County, Texas. Therefore as to DCRC, venue properly lies in such county under subdivision 23.

Wooldridge contends that Manges waived his plea of privilege by filing an answer to Horine's cross-action against him for indemnity. The cases cited by Wooldridge and those we have found support such contention. In *Mooney Aircraft, Inc. v. Adams,* 377 S.W.2d 123, 125–26 (Tex.Civ. App.1964, no writ) the Court of Civil Appeals said:

> The accomplishment of a waiver of venue privilege may be either express or implied. An express waiver is shown by clear, overt acts evidencing an intent to waive. The determination of an implied waiver presents more problems than that

of an express waiver. An implied waiver occurs when a party, often inadvertently, takes some action inconsistent with his position upon the venue issue and therefore is held to have waived his rights thereon. McDonald, Texas Civil Practice, Vol. 1, Sec. 4.40, Pages 426–427. It has been conclusively established that the inconsistent action resulting in waiver is one which invokes the general jurisdiction of the court without reservation of rights asserted by the filing of the plea of privilege. Thus our courts have said that when the party seeking a change of venue does not first secure a ruling on the plea of privilege its benefits may be waived by submitting, for determination by the court, a plea in abatement; *O'Neal v. Texas Bank & Trust Co. of Sweetwater,* 118 Tex. 133, 11 S.W.2d 791; *Texas & Pacific Ry. Co. v. Wood,* 145 Tex. 534, 199 S.W.2d 652; *Guinn v. County School Trustees of Hays County,* (Tex.Civ.App.), 261 S.W.2d 913; by pleading to a cross action in which affirmative relief is sought; *Douglas v. Baker,* 79 Tex. 499, 15 S.W. 801; *Atwell v. Talk,* (Tex.Civ.App.), 202 S.W.2d 314; by asking for and obtaining a continuance; *Sack v. Toplitz,* (Tex.Civ. App.), 165 S.W.2d 756....

In *Dodson v. Isensee,* 273 S.W. 634 (Tex. Civ.App.1925, writ dism'd), the defendant answered cross-actions filed against it by co-defendants and filed cross-actions against co-defendants without filing a plea of privilege, it therefore waived the plea of privilege against plaintiff's cause of action. Accord: *Linn Bros. Garage v. Woodville Mercantile Co.,* 244 S.W. 642 (Tex.Civ.App. 1920, no writ); *McClure v. Pair,* 214 S.W. 683 (Tex.Civ.App.1919, no writ); *Carlisle v. Frost-Llewellyn Lumber Co.,* 196 S.W. 733 (Tex.Civ.App.1917, no writ). Manges has waived his plea of privilege. Moreover, venue is proper in Williamson County in that the action of fraud was committed in such county by his agent, Horine.

The order of the trial court overruling the plea of privilege of Manges and DCRC is affirmed.