Gene BASKIN and Stephanie Baskin *v.* Robert L. COLLINS, Bobby D. Wood, W. Wayne Scoggins, Stan W. Howard, and Sam H. Mathias

91-57                                           806 S.W.2d 3

Supreme Court of Arkansas
Opinion delivered April 1, 1991

138

*Penix and Taylor*, by: *Stephen L. Taylor*, for appellants.

*Cypert, Crouch, Clark & Harwell*, by: *James E. Crouch*, for appellees.

ROBERT H. DUDLEY, Justice. The trial court found that the appellant-plaintiffs, who were purchasers of real estate, did not have a claim for misrepresentation, fraudulent concealment, or outrage and granted summary judgment for the appellee-defendants. We affirm the decision.

The facts, reviewed most favorably to appellants, are summarized as follows. Five men regularly drank coffee together at Jake's Restaurant in Springdale. Early one morning a real estate agent phoned Wayne Scoggins, one of the five, and said he had a real estate listing which might interest Scoggins. Scoggins replied, "Why don't you meet me down at Jake's." The real estate agent and Scoggins met in the presence of the other four regular coffee drinkers. Scoggins looked at the listing and said, "I'll buy

it." The other four said, "We'll buy it with you." All five signed an offer and acceptance on March 23, 1987. The purchase price was $125,000.00.

The real estate, on Highway 68 West in Springdale, had been used as a Gulf Oil service station and a six-bay car wash. Although all of the equipment was still in place, the five buyers did not intend to operate either the service station or the car wash. Instead, they intended to resell the property, or tear down the improvements and build an office building. Due to complications not material to this opinion, the transaction was not closed until May 10, 1988.

After May 10, the five owners held the property for resale. One of the five showed the property, without results, to two prospective purchasers. About the same time, probably September 1988, Scoggins was watching a newscast on commercial television and learned there was to be a new federal Environmental Protection Agency regulation that would affect service stations. On October 27, 1988, Scoggins received from the Arkansas Department of Pollution Control and Ecology a "Notification of Underground Storage Tanks" form. It required the owner of underground tanks to give his name and address and the location of the tanks, but did not disclose the details of the federal regulation. Scoggins did not respond to the notice.

On November 8, 1988, Scoggins contacted Gene Baskin, one of the plaintiff-appellants in this case, and told him about the property. Baskins owned a used car lot, Economy Motors, had previously operated service stations, and was looking for a service station/convenience store/car wash combination business. Scoggins said the five were asking $200,000.00 for the property but would take $180,000.00.

Baskins was familiar with the property. He and his wife, appellant-plaintiff Stephanie Baskins, immediately went to the property and looked at it. Baskins later met Scoggins and Sam Mathias, another one of the five owners, to go over the property. Mathias made no statement. Scoggins made all of the representations. Those representations, made during the negotiations, were as follows:

[From the deposition of Gene Baskins]:

A. Mr. Scoggins showed me that, and then he asked me about the condition of the station and he told me and I said, "What about the tanks?" And he said they were put in in '79, they were relatively new and there shouldn't be any problem with it at all.

[From the deposition of Stephanie Baskins]:

A. I asked Mr. Scoggins what [it] would take to open up the gas station and the car wash.

(Thereupon, there was a brief interruption in the proceedings.)

CONTINUATION BY MR. ROY:

Q. Go ahead.

A. And Mr. Scoggins said it wouldn't take a lot to open it.

A. He said that there should be no problem with the tanks.

Q. Now when is this? Is this at Taylor's office?

A. No, sir. That statement was made in Economy Motors.

Q. Was that the same time when he said the tanks were put in in '79?

A. Was either the same time or during the course of the day.

Q. He said there'd be no problem with the tanks?

A. There would be no problem opening the gas station. And Mr. Scoggins was well aware of why we purchased that and we — not only myself but my husband — we've told him on several occasions that we wanted to open it as a gas station and reopen the car wash.

On November 9, 1988, the Baskins and the five owners signed an offer and acceptance for $175,000.00. On November 30, 1988, the transaction was closed and a deed was given. Immediately after the closing Scoggins said, "All you have to do is pump the fuel in and go to work."

The Baskins subsequently learned about the federal regulation governing gasoline storage tanks. The regulation is to be phased in over an eight-year period commencing on October 26, 1990, *see* 40 C.F.R. § 280.91(d), and ending on December 22, 1998. *See* section 280.21. By the later date, corrosion as well as spill and overflow prevention equipment must be installed.

On January 19, 1989, the Baskins filed suit against the five sellers and their wives. They alleged misrepresentation, fraudulent concealment, and the tort of outrage, and asked damages in excess of $500,000.00. After interrogatories had been answered and depositions taken, the trial court ruled the Baskins did not have a claim and granted summary judgment. The Baskins do not appeal that part of the summary judgment dismissing (1) the five wives from all counts of the complaint; (2) the five husbands from the claim of outrage; or (3) all parties from the claim for punitive damages. The sole issue appealed is whether the trial court erred by dismissing Scoggins and the other four sellers on the claim for deceit.

The elements of the cause of action for deceit are as follows:

(1)   A false representation made by the defendant; ordinarily, one of fact;

(2)   The defendant knows that the representation is false or he does not have a sufficient basis of information to make it; that is, scienter;

(3)   The defendant intends to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

(4)   The plaintiff justifiably relies upon the representation;

(5)   The plaintiff suffers damage as a result of the reliance.

*See M.F.A. Insurance Co. v. Keller*, 274 Ark. 281, 623 S.W.2d 841 (1981).

The Baskins contend that there are facts or inferences which tend to show there is a material dispute of fact as to all five elements. We need examine only the first element, the require-

ment of a false representation, because there are no facts or inferences which tend to show a dispute of fact about that element. The Baskins argue that there was an express misrepresentation, or positive deceit, about the condition of the tanks. The argument is without merit. Gene Baskins admitted that the tanks were the age represented and that they did not leak. The Baskins additionally argue that the statement, "all you have to do is pump the fuel in and go to work" was also an express misrepresentation of fact. The statement cannot serve as the basis of a deceitful representation because it was made after the transaction was closed. Prosser points out, however, that the false representation element is today construed by many courts to include (1) concealment of material information and (2) non-disclosure of certain pertinent information. *See* Prosser, *Law of Torts* § 106 (4th ed. 1971).

The Baskins contend that the appellees actively concealed the federal regulation. We could dispose of the issue by saying that Scoggins only knew that some regulation existed, but he did not know the details of the regulation. However, we choose not to summarily dispose of the issue. The Restatement of Torts (Second) § 550 discusses fraudulent concealment as follows:

> One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.

Here, there is no proof or indication that Scoggins or the four other sellers intentionally prevented the Baskins from acquiring a copy of, or seeing, or learning about the federal regulation. There is no proof or inference that by failing to fill out or return the Arkansas Department of Pollution Control and Ecology form Scoggins fraudulently concealed the federal regulation from the Baskins. Thus, Scoggins could not be guilty of concealment of material information.

The Baskins also argue that the sellers had a duty to disclose the federal environmental regulation, and that their failure to do so constituted non-disclosure. Prosser observes that "the law appears to be working toward the ultimate conclusion

that full disclosure of all material facts must be made whenever elementary fair conduct demands it." *Id.* at 698. Section 551 of the Restatement of Torts (Second) encompasses much of Prosser's discussion of the duty to disclose certain information in a business transaction. However, we hold that the duty to disclose does not arise where the "fact" that is not disclosed is the existence of a federal regulation, because both parties have equal access to the knowledge.

In summation, there was no false representation either (1) expressly, or (2) by concealment of material information, or (3) by non-disclosure, and the trial court correctly granted summary judgment.

Affirmed.