FIDELITY MORTGAGE COMPANY of Texas *v.* James Martin COOK d/b/a Cook Construction Company

91-221                                                821 S.W.2d 39

Supreme Court of Arkansas
Opinion delivered December 23, 1991

*Dickey Law Firm, P.A.*, by: *Mark E. Long*, for appellant.

*Ramsey, Bridgforth, Harrelson & Starling*, by: *Phillip A. Raley* and *William S. Roach*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Fidelity Mortgage Company of Texas, appeals from a judgment for deceit in favor of the appellee, James Martin Cook, d/b/a Cook Construction Company, in the amount of $35,538.29. The salient issue on appeal is whether the circuit judge, who tried the case without a jury, clearly erred in finding that the elements of deceit existed in this case.

We hold that the circuit judge did not err in his findings, and we affirm his decision.

The facts involve the building of a hunting lodge instigated by two men who had formed a partnership — James Cunningham and John Staggers. The partners had agreed between themselves

that Cunningham would put up the land for the lodge and Staggers would arrange the financing for the construction. The original contractor for the job quit, apparently due to a problem in getting paid. Staggers then approached a second contractor, James Cook. Cook was agreeable to doing the job for $250,000 but only if he could receive assurances that he would be paid.

Staggers had had a previous business relationship with W. R. Parker, a principal with Fidelity Mortgage Company. They discussed the need for financing to build a hunting lodge, and Parker put Staggers in touch with James Trimble, a vice-president of Fidelity. Trimble faxed Staggers a letter on September 23, 1988, which stated that Fidelity "hereby agrees . . . to loan up to $250,000 (new loan) at a rate of 12% per annum." A commitment fee of $2,500 was required from Staggers. There was no statement in the letter that Fidelity would act as a broker for the loan or seek participation from other financial institutions. Staggers in turn faxed a copy of the letter to Cook's attorney that same day.

On the following day, September 24, 1988, Cook entered into a construction contract with Staggers and Cunningham to build the hunting lodge. "Under that contract, Staggers and Cunningham were to pay Cook $150,000 after a certain part of the project had been completed. Cook began construction on September 26, 1988. During the first week of construction, Cook's attorney called Fidelity and talked to Trimble and was assured that Fidelity would pay the money to Cook in accordance with the construction contract. Trimble also testified that during the last week in September Staggers asked him to write a letter stating that the Fidelity loan was to be used to build a hunting lodge and that payments would be made to Cook pursuant to the construction contract.

On October 11, 1988, Cook submitted a bill for $150,000 to Staggers after completing the requisite part of the project. Payment was not made on that date, and Cook's attorney advised him to stop work. Due to assurances from Trimble that payment would be forthcoming, Cook continued work on the project. Three days later, on October 14, Trimble, on behalf of Fidelity, wrote the letter that Staggers had requested in which he specifically stated that the loan was for the hunting lodge property and

that payments would be made to Cook in accordance with the construction contract. By letter dated October 18, Trimble wrote Staggers that payment would be delayed because one of the trustees (later identified as W.R. Parker) was needed to approve the check, and he was out of the country.

At some point between October 17 and October 21, 1988, Cook stopped work on the project. The amount of work performed by Cook and the fact that Cook was not paid are not in dispute. Fidelity, through Trimble, finally severed its business relationship with Staggers in November or December. At that time Trimble advised Cook's attorney that Staggers had never paid the $2,500 loan commitment fee.

Cook first sued Staggers and Cunningham for $150,000. He obtained judgment and foreclosed his lien against the hunting lodge property, thereby realizing $50,000. He collected an additional $1,004 by garnishments of Cunningham.

Cook next sued Fidelity for deceit on the basis that Fidelity misrepresented its capacity to make the loan and to pay him and further that it intentionally induced him to rely on these false representations. After the bench trial, the circuit judge found for Cook and assessed damages against Fidelity in the amount of $35,538.29, which represented Cook's out-of-pocket expenses for the job, less the amounts received by garnishment and foreclosure.

Fidelity urges on appeal that the elements of deceit were not proven in this case and that the circuit judge clearly erred in finding that they were. We have had occasion recently to discuss the five elements of deceit, which are:

(1)   The defendant makes a false representation — ordinarily, one of fact;

(2)   The defendant knows that the representation is false or he does not have a sufficient basis of information to make it; that is, scienter;

(3)   The defendant intends to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

(4)   The plaintiff justifiably relies upon the

representation;

(5) The plaintiff suffers damage as a result of the reliance.

*Baskin* v. *Collins*, 305 Ark. 137, 141, 806 S.W.2d 3, 5 (1991); *see also Nicholson* v. *Century 21*, 307 Ark. 161, 818 S.W.2d 254 (1991); *MFA Mutual Ins. Co.* v. *Keller*, 274 Ark. 281, 623 S.W.2d 841 (1981). Each element must be proven by a preponderance of the evidence in order to prove deceit. *See Storthz* v. *Commercial National Bank*, 276 Ark. 10, 631 S.W.2d 613 (1982).

### a. False Representation

We have no trouble in sustaining the circuit judge's finding of misrepresentation. Simply stated, Fidelity agreed to loan $250,000 to Staggers when its net worth totalled less than $50,000. Had there been any hint that Fidelity would act as the broker for the loan or would ask for institutions to participate in the loan, our conclusion would be different. But there was no such intimation in the loan commitment letter signed by Trimble on behalf of Fidelity on September 23. There, he stated clearly and unequivocally under a heading entitled "Commitment:"

Fidelity Mortgage Company of Texas hereby agrees to loan up to $250,000 (new loan) at a rate of 12% per annum.

This Fidelity simply did not have the capability to do.

We have noted recently that many courts now construe false representation to include "(1) Concealment of material information and (2) Non-disclosure of certain pertinent information." *Baskin* v. *Collins*, 305 Ark. 137, 142, 806 S.W.2d 3, 5 (1991). If Fidelity did not have sufficient assets of its own as of September 23 to make the loan, Trimble should have arranged for independent financing from other institutions before writing the loan commitment letter. But he did not do this. Rather, he obligated Fidelity to make the loan while concealing insufficient net worth and knowing full well that Fidelity did not have the capability to make good on its promise.

Fidelity argues that it was not obligated to make payments because it never received the $2,500 loan fee from Staggers. In

the numerous conversations and letters between Fidelity and Cook during September and October 1988, there was no mention that the fee had not been paid. Yet all during this period Trimble made verbal and written assurances on behalf of Fidelity that Cook would be paid for his work. The trial judge correctly found that this conduct constituted a false representation.

### b. Scienter

Nor do we agree that Fidelity lacked the intent to misrepresent. Trimble and Parker did not reveal the net worth of Fidelity to Cook or his attorney during the critical period of construction. Nor did they indicate that the loan fee had not been paid. On the contrary, the statements of Trimble were in the nature of assurances that all was well and that the delay in payment was only due to Parker's temporary unavailability. Only much later did the true circumstances concerning Fidelity and its relationship to Staggers come to light.

### c. Intention to Induce to Act

Fidelity vigorously contends that it had no knowledge of Cook's involvement when it issued the loan commitment to Staggers on September 23 and that Cook's reliance on the commitment was revealed to it after the construction was virtually complete. The record, though, does not support this contention.

Cook's attorney testified that he followed up with Trimble the first week of construction to make certain that the loan funds would be paid to Cook according to the construction contract. He was assured that they would be. Trimble recalled talking to Cook's attorney but was uncertain about the details of the conversation. He did recall that Staggers asked him "in the last part of September" to write a letter identifying the loan with the hunting lodge property and the construction contract. Moreover, W.R. Parker testified that he knew before the commitment letter was issued that the loan would be used to build a hunting lodge.

Under such facts, we cannot say that the circuit judge's finding that Fidelity knew from Cook's counsel that Cook was relying on the loan commitment and doing the work because of it was clearly erroneous. As the trial judge said, the only reason to

issue a loan commitment was to give assurances upon which someone will rely. Cook clearly did rely on it and Fidelity, through Trimble, knew early on in the construction that Cook was doing so.

■ The doctrine of transferred intent is generally not applicable in cases of misrepresentation. *See Prosser and Keeton, Law of Torts*, ch. 18, § 107, p. 743 (5th ed. 1984). But where a document is intended to be directed to others in addition to the immediate recipient, or where it is customary for the document to be relied upon by third parties, the doctrine of transferred intent will be applied to support a case of misrepresentation. *Prosser and Keeton* at p. 744. This principle furnishes legal support for the circuit judge's finding of scienter in this case.

### d. Justifiable Reliance

■ There is no question that Cook relied on the loan commitment. Equally as clear is the fact that Fidelity, through Trimble, knew about the construction contract and gave assurances to Cook and his lawyer that it would be paid. Neither Cook nor his attorney were alerted to the fact that anything was amiss. The trial judge's finding of justifiable reliance is not in error.

### e. Damages

■ That Cook was damaged in terms of out-of-pocket expenses is obvious, as the trial judge found. We have no hesitancy in affirming the trial judge's assessment of damages in the amount of the total expenses incurred from date construction commenced on September 26, 1988, less judgment amounts previously awarded, for a net judgment of $35,538.29.

Though Fidelity asserts that damages, if any, should be calculated from October 14, when it contends the first statements alleged to be misrepresentations were made, and not from September 26, we do not find that argument to be convincing. Testimony in the record supports the circuit judge's finding that conversations about paying Cook were had with Trimble within a few days of September 26. Moreover, it is more than reasonable to assume that Fidelity knew the purpose of the loan and was aware that those involved in the construction would be relying on the commitment letter when it was issued.

■ Cook, finally, moves to recover costs for supplementing what he describes as a deficient abstract. We do not agree. Fidelity's abstract was sufficient to advise this court of the facts underlying the issues on appeal. *See Goodloe* v. *Goodloe*, 253 Ark. 550, 487 S.W.2d 593 (1972).

The decision of the trial judge is affirmed. The motion of appellee to recover costs is denied.

HOLT, C.J. and NEWBERN, J. dissent.

DAVID NEWBERN, Justice, dissenting. This case is very close on the question whether there is sufficient evidence to prove intent to deceive. It requires us to examine the fine line between failure to perform a contractual obligation and misrepresentation of fact. Surprisingly, no cases are cited by the parties dealing with the point, and I find no cases in which this Court has spelled it out. There are, however, cases from other jurisdictions which are helpful.

In *Rigby Corp.* v. *Boatmen's Bank and Trust Co.*, 713 S.W.2d 517 (Mo. App. 1986), the Trial Court awarded summary judgment to a lender which allegedly silently assented to renewal of a promissory note it had no intention of renewing, and the Court of Appeals affirmed. The Court held there was simply no support (evidence) that, at the time the representations by silence were made, the lender harbored an intent not to renew the note.

> Fraud is never presumed and the law allows an inference of such deception "only if the evidence rises above mere suspicion and points logically and convincingly" to its presence. *Weaver* v. *Travers*, 631 S.W.2d at 83. Thus, where the transaction comports as well with honesty as with fraudulent purpose, the law refers it to the better motive. *Powers* v. *Shore*, 248 S.W.2d at 5[2-4]. [The lender's] conduct — the assent to extend the note assumed — to call the note on the due date despite the promise to extend, therefore, under the evidence most favorable to [the borrower], amounts at best to breach of contract, but not to actionable fraud. [713 S.W.2d at 540]

In *Mark Twain Plaza Bank* v. *Lowell H. Listrom & Co., Inc.*, 714 S.W.2d 859 (Mo. App. 1986), a bank received a "trust letter" from a stock broker to the effect it would transfer shares of

stock of a client to the bank as collateral. The letter failed to state that the shares in question were encumbered in a way that significantly lowered their value and made the promised delivery doubtful. The Court of Appeals affirmed the Trial Court's holding that fraudulent misrepresentation had occurred. There was evidence, however, that the broker knew of the encumbrance which devalued it, and which would cause it not to be delivered, and that the bank was relying on the promise to deliver the stock.

In the case now before us, we have no direct evidence that when Trimble made the representations about the loan he knew and withheld the fact that Fidelity could not make the loan or that outside assistance was unlikely. There is nothing to show he knew the loan would· not be made. We do have, however, the Trial Court's factual determination that Trimble was not telling the truth when he stated that the only reason the money was not forthcoming was because the signature of a Fidelity principal who was out of the country was needed. While someone could speculate, on the basis of this factual finding, that Trimble had become aware that Fidelity would be unable to come up with the money, I cannot go that far.

In my view, when the alleged misrepresentation consists of withholding information in the context of making a promise, we should insist on at least some evidence that when the promise was made there was an intent not to perform.

> When misrepresentations involve a promise to perform an act in the future, the plaintiff must prove that, at the time the promise was made, the defendants did not intend to perform. Proof of the intent element is almost always made by circumstantial evidence and is "peculiarly a question for the trier of facts." *Pulchny* v. *Pulchny*, 555 S.W.2d 543, 546 (Tex. Civ. App. 1977, no writ). Such intent (not to perform as promised) is usually not susceptible of direct proof because it depends on determining the "[h]idden purposes of the mind." *Id.* at 545, quoting 37 Am.Jur. 2d, Fraud and Deceit, § 477 (1968). As stated in *Pulchny, supra*, to determine intent the court looks to the circumstances under which the promise was made, the relationships and interests of the parties, the nature of their transaction, the failure to perform and the nature of efforts

of the promissor to perform. [*Duval County Ranch Co.* v. *Wooldridge*, 667 S.W.2d 887 at 895 (Tex. App. 3 Dist. 1984)]

See also *Spoljaric* v. *Percival Tours, Inc.*, 708 S.W.2d 432 at 434 (Tex. 1986), where the Texas Supreme Court upheld a fraud determination but made it clear that "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act."

In this case, it may be that the Trial Court could have found an intent not to perform when the promise was made, but no such finding was made. While I understand the holding of the majority opinion to be that there was a withholding of material facts, I do not believe there has been a showing or a finding that Trimble knew facts which would make it clear to him that the loan could not be made. I would require evidence showing that he intended for Cook to rely on a promise he knew Fidelity could not or would not keep.

I respectfully dissent.

HOLT, C.J., joins in this dissent.