2013 Ark. 159

**FIRST ARKANSAS BANK & TRUST, TRUSTEE; First Arkansas Bank & Trust; Bank of England; Merchants and Planters Bank; The Capital Bank; Heber Springs State Bank; Timberland Bank; Arkansas Bankers' Bank; and M & P Community Bancshares, Inc., Appellants**

v.

**GILL ELROD RAGON OWEN & SHERMAN, P.A.; Christopher L. Travis, P.A.; Dream Team Holdings 1, LLC; and Fayetteville Municipal Property Owners' Improvement District No. 12–Belclaire, Appellees.**

No. 12–540.

Supreme Court of Arkansas.

April 18, 2013.

Rehearing Denied May 30, 2013.

48

Thrash Law Firm, P.A., Little Rock, by: Thomas P. Thrash and Marcus N. Bozeman, for appellants.

Barber, McCaskill, Jones & Hale, P.A., Little Rock, by: Robert L. Henry, III, G. Spence Fricke, and S. Brent Wakefield, for appellees Gill Elrod Ragon Owen & Sherman, P.A.; Christopher L. Travis, P.A.; and Christopher L. Travis.

A. Heath Abshure, Commissioner, Arkansas Securities Department; Mac Dodson, President, Arkansas Development Finance Authority; and Candace A. Franks, Bank Commissioner, Arkansas State Bank Department; by: Colin R. Jorgensen, Ass't Att'y Gen., for amici curiae The Arkansas Securities Department, The Arkansas Development Finance Authority, and The Arkansas State Bank Department.

Elliott & Smith Law Firm, Fayetteville, by: Don R. Elliott, Jr., for amicus curiae The Arkansas Bankers Association.

Quattlebaum, Grooms, Full & Burrow PLLC, Little Rock, by: E.B. Chiles IV and Jennifer Wethington Merritt, for amicus curiae Stephens Inc.

JIM HANNAH, Chief Justice.

Appellants, First Arkansas Bank & Trust, Trustee; First Arkansas Bank & Trust; Bank of England; Merchants and Planters Bank; The Capital Bank; Heber Springs State Bank; Timberland Bank; Arkansas Banker's Bank; and M & P Community Bancshares, Inc., appeal an order of summary judgment entered in the Pulaski County Circuit Court in favor of Gill Elrod Ragon Owen & Sherman, P.A.; Christopher L. Travis, P.A., (collectively referred to as the Gill firm); Dream Team Holdings 1, LLC; and Fayetteville Municipal Property Owners' Improvement District No. 12–Belclaire. On appeal, appellants assert that the circuit court erred in determining that the Gill firm was not subject to liability under the Arkansas Securities Act, contract law, fraud, negligence, common-law fraud, or breach of a fiduciary duty. This case presents issues of first impression. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(1) (2012).

This case arose from a failed attempt to develop forty acres into a ninety-six-home subdivision. Sometime prior to June 2005, Brandon Barber, Seth Kaffka, and Brandon Rains formed Dream Team Holdings 1, LLC (Dream Team). Dream Team purchased the forty acres in Washington County on which they intended to build homes (the Belclaire development) and secured a mortgage on the property with First Federal Bank on June 3, 2005, to effect the purchase. The mortgage was recorded on August 2, 2005, in Washington County. Later in 2005, Dream Team filed a petition with the city of Fayetteville to form a municipal property owners' district. The petition was granted and Dream Team formed the Fayetteville Municipal Improvement District No. 12–Belclaire (the District).[1] The District wished to issue tax-free municipal bonds in order to finance the public-improvement needs, such as sewers, streets, curbing, etc.[2] On August 16, 2005, Christopher L. Travis of the Gill firm was retained by the District as legal counsel for the proposed issuance of improvement bonds to finance the public improvements in the Belclaire development.[3]

---

1. Pursuant to the Municipal Property Owners' Improvement Act, improvement districts may be formed by unanimous approval of owners of real property located in the territory to be included in the district. See Ark.Code Ann. § 14–94–102 (Repl.1998).

2. See Ark.Code Ann. § 14–94–123 (Repl. 1998).

3. The Gill firm was subsequently also retained by Dream Team as developer's counsel, and counsel to the District, to provide legal ser-

The Gill firm, specifically Travis, drafted the Preliminary Official Statement (POS) and the Official Statement (OS), the disclosure documents provided to underwriter American Municipal Securities, Inc. (AMS), for use in marketing the bonds. The District issued Series A and Series B bonds. Only Series B bonds are at issue in this case. Pursuant to the POS, the Series B bonds are "limited obligations of the District, to which the District has pledged the Capital Improvement Use Fee Revenues and a mortgage of the land located with[in] the District that is owned by the Developer." The Series B bonds were to be paid by collection of the Capital Improvement Use Fees. The bonds were issued by the District and sold on February 6, 2006, to AMS. By February 7, 2006, AMS had sold the bonds to appellant Arkansas Banker's Bank. Arkansas Banker's Bank retained a portion of the Series B bonds and sold all remaining Series B bonds to the other appellants.

Dream Team, as property owner, defaulted on payment of the Capital Improvement Use Fees on the Series B bonds. Subsequently, Dream Team defaulted on the original mortgage securing the purchase of the development property, and the property was sold. Appellants sued the Gill firm, alleging that the loss of security had compromised their Series B bonds and alleging violations of the Arkansas Securities Act, attorney malpractice, and other causes of action arising from a failure to disclose in the bond offering that the purchase mortgage was superior to the lien created by the Capital Improvement Use Fees obligation.

The Gill firm moved for summary judgment. At the hearing on the motion, the circuit court, with appellants' approval, summarized appellants' allegations as follows:

1. Legal malpractice and fraud were committed by a failure to disclose in the bond offering documents that there was a debt on the development property secured by a promissory note and mortgage;

2. Failure to disclose the same debt, promissory note, and mortgage constituted a violation of the Arkansas Securities Act;

3. The same inaction constitutes a breach of duty under a negligence cause of action.

The order of summary judgment concluded as follows:

1. There was no attorney/client relationship providing the direct privity required to sue in legal malpractice and no evidence to support any of the exceptions to the requirement of direct privity;

2. There is no liability under the Arkansas Securities Act because "an attorney acting as the attorney for the issuer of securities is not liable to the ultimate purchasers and does not act as a seller, a control person, an agent, or anyone who materially aids in the sale of the securities;"

3. All remaining causes of action "such as breach of contract, breach of fiduciary duty, negligence and fraud" fail as a matter of law because they are derivative of liability under attorney malpractice or the Arkansas Securities Act.

 Summary judgment should be granted only when there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *See Searcy Cnty. Counsel for Ethical Gov't v. Hinchey*, 2013 Ark. 84, at 5, 2013 WL 781099. Once the

vices from start to finish on construction pro- jects.

moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *See id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review considers the pleadings and also the affidavits and documents filed by the parties. *See id.*

At issue in this lawsuit are causes of action alleged to arise from representations, lack of representations, or misrepresentations made at the time of the negotiation and purchase of unrated municipal-improvement bonds. The appellants allege that the Gill firm had a duty to inform them of the mortgage on the real property and that they failed to inform them. Appellants further allege that had they been informed of a mortgage on the real property to which improvements were to be made with bond proceeds and that the Series B bonds were not secured by a first lien on the real property, they would not have purchased the bonds.

We first consider appellants' argument that the Gill firm is liable under the Arkansas Securities Act. The correct application and interpretation of an Arkansas statute is a question of law, which this court decides de novo. *Broussard v. St. Edward Mercy Health Sys., Inc.,* 2012 Ark. 14, 386 S.W.3d 385. The basic rule of statutory construction to which all interpretive guides must yield is to give effect to the intent of the General Assembly. *Falcon Cable Media LP v. Ark. Pub. Serv. Comm'n,* 2012 Ark. 463, 425 S.W.3d 704.

When reviewing issues of statutory interpretation, the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning. *Scudder v. Ramsey,* 2013 Ark. 115, 426 S.W.3d 427.

Section 23–42–106 provides in relevant part as follows:

(a)(1) Any person who commits the following acts is liable to the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six percent (6%) per year from the date of payment, costs, and reasonable attorney's fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security:

(A) Offers or sells a security in violation of § 23–42–301, § 23–42–212(b), § 23–42–501(1) or (2), or any rule or order under § 23–42–502 which requires the affirmative approval of sales literature before it is used, or in violation of any condition imposed under § 23–42–403(d), § 23–42–404(g), or § 23–42–404(i); or

(B) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

. . . .

(c) Every person who controls a seller liable under subsection (a) of this sec-

tion or a purchaser liable under subsection (b) of this section; every partner, officer, or director of such a seller or purchaser; every person occupying a similar status or performing a similar function; every employee of such a seller or purchaser who materially aids in the sale; and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with, and to the same extent as, the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

Ark.Code Ann. § 23–42–106 (Repl.2012).

■ Arkansas Code Annotated section 23–42–106(a) provides liability for sellers of securities who commit certain acts or omissions. Under the facts of this case, the failure to include in the POS and the OS direct disclosure of the underlying purchase mortgage in the context of the sale of the Series B bonds did not constitute sale by the Gill firm of a security |₇by means of an untrue statement of material fact. The bonds were issued by the District and sold through AMS. The Gill firm was not a seller, and as appellants do not even allege that the Gill firm was a seller, there is no liability against the Gill firm under section 23–42–106(a).

Appellants next argue liability under section 23–42–106(c), contending that the Gill firm controlled the sale of the bonds. "Control" means the "power to direct the management and policies of another." *Black's Law Dictionary* 330 (7th ed.1999). The Gill firm, in this case, acted as bond counsel. Appellants offered no proof that the Gill firm controlled the sale by direct-

ing the management and policies of the seller.

Appellants also argue the Gill firm is liable as an agent of the seller who materially aided in the sale of the bonds pursuant to section 23–42–106(c). Arkansas Code Annotated section 23–42–101(1)(A) defines an agent as an individual, other than a broker-dealer, who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities and supervises individuals who effect or attempt to effect purchases or sales of securities for a broker-dealer. In *Quick v. Woody*, 295 Ark. 168, 747 S.W.2d 108 (1988), we held that the mother of the owner of an oil company acted as an agent who materially aided in the sale of unregistered bonds where she convinced investors to purchase, accepted their purchase money, and took an active role in advertising the bonds. Here, unlike in *Quick*, no proof was offered by appellants to establish that the Gill firm acted as the seller's agent or that it "materially aided" in the sale of the bonds as an agent of the seller. We affirm the circuit court is affirmed on this point.

■ We next address the argument that the circuit court erred in entering summary |₈judgment on the claims arising under attorney malpractice. The parties rely on the Arkansas Liability of Attorneys statute:

(a) No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation, except for:

(1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations; or

(2) Other acts, omissions, decisions, or conduct if the person, partnership, or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action. For the purposes of this subdivision, if the person, partnership, or corporation:

(A) Identifies in writing to the client those persons who are intended to rely on the services, and

(B) Sends a copy of the writing or similar statement to those persons identified in the writing or statement, then the person, partnership, or corporation or any of its employees, partners, members, officers, or shareholders may be held liable only to the persons intended to so rely, in addition to those persons in privity of contract with the person, partnership, or corporation.

Ark.Code Ann. § 16–22–310 (Supp.2011). In this case, the appellants alleged that in the course of the performance of its professional duties, the Gill firm by intention or omission failed to indicate in the POS and the OS that the Series B bonds were not secured by a first lien on the real property being developed and that the Gill firm had a duty to specifically state in the POS and the OS that a first mortgage existed and was superior to any lien arising from a failure to pay the use fees due on the property. This court has previously construed section 16–22–310:

Our analysis begins with the basic premise of statutory construction that we construe the statute just as it reads giving the words their ordinary and usually accepted meaning in common language. *Lawhon Farm Servs. v. Brown,* 335 Ark. 272, 984 S.W.2d 1 (1998); *Vanderpool v. Fidelity & Cas. Ins. Co.,* 327 Ark. 407, 939 S.W.2d 280 (1997). The plain language of Ark.Code Ann. § 16–22–310 requires the plaintiff to have direct privity of contract with "the person, partnership, or corporation" he or she is suing for legal malpractice. Likewise, we have narrowly construed the privity requirement to require direct privity between the plaintiff and the attorney or entity to be held liable for legal malpractice. *See Clark v. Ridgeway,* 323 Ark. 378, 914 S.W.2d 745 (1996); *Wiseman v. Batchelor,* 315 Ark. 85, 864 S.W.2d 248 (1993). In particular, in *Clark* we said that "the language of this section [Ark. Code Ann. § 16–22–310(a) ] is precise and clear and reveals that the contract contemplated by the statute relates to a contract for professional services performed by the *attorney for the client.*" *Clark, supra* (emphasis added).

*McDonald v. Pettus,* 337 Ark. 265, 271–72, 988 S.W.2d 9, 12 (1999). The record reveals that the Gill firm was retained by the District and that the Gill firm had no attorney-client relationship with any appellant. There is no privity between the Gill firm and appellants, so the Gill firm may not be held liable under 16–22–310(a).

Our conclusion with respect to privity does not end our analysis, "because the lawyer-immunity statute contains two exceptions to the privity requirement," and [n]o privity is required for " '[a]cts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations.' " *McDonald,* 337 Ark. at 274, 988 S.W.2d at 14. Therefore, suit may yet be brought under the statute against an attorney where the acts or omissions complained of constitute fraud or intentional misrepresentations.

To prove fraud, a plaintiff must prove five elements: (1) that the

defendant made a false representation of material fact; (2) that the defendant knew that the representation was false or that there was insufficient evidence upon which to make the representation; (3) that the defendant intended to induce action or inaction by the plaintiff in reliance upon the representation; (4) that the plaintiff justifiably relied on the representation; and (5) that the plaintiff suffered damage as a result of the false representation. *See Harrill & Sutter, P.L.L.C. v. Kosin,* 2012 Ark. 385, at 5, 424 S.W.3d 272, 275. The Gill firm acknowledges that it was aware of the First Federal Bank mortgage on the property in August 2005 and asserts that, given the structure of the Districts transaction, First Federal Bank's mortgage was not information that might have been proved of assistance to prospective purchasers in evaluating the risks of purchasing the Districts' bonds and, therefore, was not a material fact that should have been disclosed in the POS or the OS. According to the Gill firm, if the municipal property owner's improvement district statute is followed, any land loans are subordinate to liens arising from the bonds. In other words, the land loan need not be disclosed because amounts due on the bonds from landowners would have created a lien superior to any land loan. In version five of the POS, dated December 8, 2005, the Gill firm included language that the lien securing the Capital Improvement Use Fee was "not superior to prior mortgages and like liens," which would be separate from tax liens that might arise. Travis testified as follows:

> In the Belclaire transaction, the collateral for the Series B bonds included a lien securing the developer's obligation to pay user fees. When I prepared version five of the Preliminary Official Statement dated December 8, 2005, I intended for that lien to be subordinate to the First Federal mortgage. By statute, the special tax securing the B bonds should take priority over the First Federal mortgage. In my opinion, the B bonds should take priority over the First Federal mortgage in any foreclosure proceeding.

Thus, the Gill firm argues that disclosure of the First Federal mortgage was not material, and there was no duty to disclose it in the bond transaction. Conversely, appellants assert that the priority of the First Federal mortgage was material and the Gill firm had a duty to disclose it; the failure to disclose the First Federal mortgage was an intentional omission and that had the mortgage been disclosed, the bond issue would not have closed; and that the failure to disclose the mortgage was done with the intent of defrauding appellants as a means to secure the fees the Gill firm expected to realize from the bond transaction. The appellants are correct that there remain issues of material facts to be litigated. On this issue, the decision of the circuit court to grant summary judgment is reversed and remanded.

Before leaving this point, we note that appellants further argue that, under section 16–22–310(2) an attorney may be held liable if the primary intent of the client was for the professional services to benefit or influence the particular person bringing the action, and where such persons were identified, and the attorney sends a copy of the writing to those persons identified in the writing. No such writing was sent in this case; therefore, section 16–23–310(2) has no application in this case. In any event, no convincing argument was presented on this issue which precludes appellate review. *See McNeil v. Weiss,* 2011 Ark. 46, 378 S.W.3d 133.

Finally, while there is a question of material fact as to whether liability could flow to the Gill firm under the fraud exception to privity set out under the attorney-mal-

practice statute, there was no relationship giving rise to a duty under contract, negligence, or breach of a fiduciary duty.

Affirmed in part; reversed and remanded in part.

BAKER and HART, JJ., dissent.

KAREN R. BAKER, Justice, dissenting.

The majority holds, and First Arkansas readily concedes, that a lawsuit such as this one requires proof of a duty. The majority then correctly concludes that First Arkansas failed to show the Gill firm owed it a duty under the Arkansas Securities Act, an attorney-client relationship, a contract, a negligence theory, or a fiduciary duty.

The majority concludes that the circuit court erred in entering summary judgment on the claims arising under the attorney-malpractice statute, Ark.Code Ann. § 16–22–310, which grants immunity to attorneys from lawsuits brought by persons not in privity with them. The majority relies on the exception contained in Ark.Code Ann. § 16–22–310(a)(1). However, the exception does not create a cause of action. Instead, it merely provides that Ark.Code Ann. § 16–22–310 does not provide immunity where there is a cause of action for fraud. In addition, to fit within the exception, the cause of action must be for actual, not constructive fraud. *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993).

Actual fraud is established by proving the existence of the following five elements: (1) a false representation, usually of a material fact; (2) knowledge or belief by the defendant that the representation is false; (3) intent to induce reliance on the part of the plaintiff; (4) justifiable reliance by the plaintiff; and (5) resulting damage to the plaintiff. *Nicholson v. Century 21*, 307 Ark. 161, 818 S.W.2d 254 (1991). Con-

structive fraud, on the other hand, is fraud based upon a breach of a legal or equitable duty which the law declares to be fraudulent because of its tendency to deceive others, regardless of the moral guilt, purpose, or intent of the perpetrator. *Miskimins v. City Nat'l Bank*, 248 Ark. 1194, 456 S.W.2d 673 (1970). Simply put, constructive fraud is not an intentional tort and is not an exception to Ark.Code Ann. § 16–22–310. *Wiseman*, 315 Ark. 85, 864 S.W.2d 248; *see also Almand v. Benton Cnty.*, 145 B.R. 608 (W.D.Ark.1992).

Here, First Arkansas asserts only an omission, not an actual false statement or affirmative act of concealment. Absent a false representation, the elements of actual fraud are not met. While concealment of a material fact may be sufficient to support a charge of fraud, "mere silence is not representation, and in the absence of a duty to speak ... silence as to a material fact does not of itself constitute fraud." *Bridges v. United Sav. Ass'n*, 246 Ark. 221, 228, 438 S.W.2d 303, 306 (1969). Thus, there must be a duty to speak or some act of concealment. In *Baskin v. Collins*, 305 Ark. 137, 142, 806 S.W.2d 3, 5 (1991), we stated that fraudulent concealment is when "[o]ne party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information." *Id.*, 305 Ark. 137, 142, 806 S.W.2d 3, 5 (1991). Here, there is no allegation that the Gill firm in any way prevented First Arkansas from discovering the mortgage. "[T]he general rule is ... [that] absent affirmative fraud, a party, in order to hold another liable in fraud ... must seek out the information he desires and may not omit inquiry and examination and then complain that the other did not volunteer information." *Ward v. Worthen Bank & Trust Co.*, 284 Ark. 355, 359 681 S.W.2d 365, 368 (1984), (quoting *Berkeley Pump*

*Co. v. Reed–Joseph Land Co.,* 279 Ark. 384, 653 S.W.2d 128 (1983)).

Additionally, in *Farm Bureau Policy Holders & Members v. Farm Bureau Mutual Insurance Co. of Arkansas, Inc.,* 335 Ark. 285, 984 S.W.2d 6 (1998), we explained:

> To be guilty of fraud or deceit, a false representation must be made. *Fidelity Mortgage Co. v. Cook,* 307 Ark. 496, 821 S.W.2d 39 (1991). In order to extend the tort of deceit to instances where the false representation is due to silence, this court has stated that the false representation must include '(1) concealment of material information and (2) non-disclosure of certain pertinent information.' *Id.* at 500, 821 S.W.2d at 42 (quoting *Baskin v. Collins,* 305 Ark. 137, 806 S.W.2d 3 (1991)).

*Id.* at 301–302, 984 S.W.2d at 14–15; *see also Grayson & Grayson, P.A. v. Couch,* 2012 Ark. App. 20, 388 S.W.3d 96 ("Silence can be the basis of a constructive fraud; generally, however, liability for a nondisclosure may be found only in special circumstances.... [The plaintiff], therefore, had to demonstrate that [the defendants] concealed a material fact known to it and that it had a duty to communicate that fact to [the plaintiff].") (citing *Downum v. Downum,* 101 Ark.App. 243, 274 S.W.3d 349 (2008)). Again, however, there must be an affirmative duty to disclose.

In this case, there is no allegation of affirmative concealment of the mortgage, which was a matter of public record, and the majority has not identified any legal theory under which the Gill firm owed First Arkansas a duty. Additionally, while silence may form the basis of a constructive fraud, constructive fraud is insufficient to bring a cause of action within the exception contained in § 16–22–310(a)(1). Thus, I cannot say the circuit court erred in granting summary judgment in favor of the Gill firm.

HART, J., joins.