Cite as 2021 Ark. App. 127

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-19-134

| | |
|---|---|
| KIMBRO STEPHENS INSURANCE TRUST AND A.K. TENNESSEE IRREVOCABLE RESIDUARY TRUST<br>APPELLANTS | **Opinion Delivered:** March 17, 2021<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26CV-16-27] |
| V. | |
| JAMES E. SMITH, JR.; KIMBERLY WOODYARD; AND SMITH AKINS & GLADDEN, P.A.<br><br>APPELLEES | HONORABLE JOHN HOMER WRIGHT, JUDGE<br><br>AFFIRMED; MOTION TO DISMISS DENIED |

## RITA W. GRUBER, Judge

The appellants, Kimbro Stephens Insurance Trust and A.K. Tennessee Irrevocable Residuary Trust, appeal the Garland County Circuit Court's order granting summary judgment in favor of appellees James E. Smith, Jr. (Smith), Kimberly Woodyard (Woodyard), and the firm Smith Akins & Gladden, P.A. (Smith-Akins). The circuit court determined that the appellees were immune from liability under Arkansas Code Annotated section 16-22-310 (Supp. 2019), the attorney-immunity statute, because the appellants and the appellees were not in direct privity of contract. The circuit court also determined that neither of the exceptions to the privity requirement—for fraud and misrepresentation and for third-party beneficiaries of counsel's services—applied.

On appeal, the appellants argue that the circuit court erred when it determined that they failed to offer proof of fraud to warrant an exception to direct privity. The appellees

have filed a motion to dismiss the appeal for lack of jurisdiction, and they alternatively assert that the appeal has no merit. We deny the motion to dismiss and affirm the order granting summary judgment.

## I. *Factual Background*

Kimbro Stephens (Kimbro) is the beneficiary of appellant Kimbro Stephens Insurance Trust. He was formerly a beneficiary of appellant A.K. Tennessee Irrevocable Trust, which, following a divorce, is now exclusively for the benefit of Kimbro's ex-wife, Daphna Alice Stephens (Alice). Kimbro, Alice, and other members of the Stephens family owned various entities—all using a variation of the name "Living Hope"—that provided psychiatric services in Arkansas. The factual background of the dispute between the appellants and the appellees involves separate federal bankruptcy cases filed by two of those entities, Living Hope Southwest, LLC (Southwest), and Living Hope Southeast, LLC (Southeast), which was represented by the appellees.

## A. The Southwest Bankruptcy

The Southwest bankruptcy began when Pinewood Enterprises L.C. (Pinewood) sued Southwest in the Miller County Circuit Court for overdue lease payments on a building that Southwest rented. Pinewood's lawsuit and other circumstances led Southwest to file a petition for reorganization under Chapter 11 of the United States Bankruptcy Code on July 18, 2006. The petition was filed in the United States Bankruptcy Court for the Western District of Arkansas (Western District), and it triggered an automatic stay of collection by Southwest's creditors, including Pinewood.

2

After Southwest filed its petition for bankruptcy, it transferred its business to a new company, Southeast, which Kimbro created on May 5, 2006, shortly before Southwest filed its petition.[1] This transfer became a focal point of the Southwest bankruptcy following the conversion of the bankruptcy petition from Chapter 11 to Chapter 7 in 2008.

The conversion to Chapter 7 led to the appointment of a bankruptcy trustee (SW Trustee), who, in exercise of her fiduciary duty to Southwest's creditors, initiated an adverse proceeding (AP) against Southeast in 2009. Specifically, the trustee filed a complaint that challenged the postpetition transfer of assets from Southwest to Southeast, alleging that Kimbro committed postpetition fraud by transferring Southwest's funds to Southeast and using Southwest's human and financial resources to operate Southeast. Later in 2009, the SW Trustee, Southeast, and the Stephens family reached a settlement in the AP.

The AP settlement was reversed in October 2012, and shortly thereafter, the SW Trustee filed an amended complaint in the Western District. The SW Trustee again alleged that Southwest had made unauthorized postpetition transfers to Southeast, and she sought a constructive trust in favor of Southwest "on a sufficient number of Southeast's assets which will compensate [Southwest] for the wrongful transfer of assets for the use and benefit of Southwest and its creditors." The Western District set the AP for trial on January 15, 2013.

According to the exhibits attached to the complaint filed in the Garland County case, the relationship between Kimbro and the appellees began to break down shortly before the AP trial. In an affidavit, Mike Grundy, the chief executive officer (CEO) of Southeast,

---

[1]As a consequence of this transfer, Southeast was added as a defendant to the Pinewood lawsuit in Miller County.

described a December 2012 meeting in which Smith and Kimbro had a difference of opinion regarding Southeast's defense in the AP trial. According to Grundy, Smith explained that it "was useless to defend the [AP] case." Kimbro, however, wanted to put on a defense because an adverse judgment in the AP "would be damaging to him and [Southeast] in the upcoming trial in Miller County." Grundy claimed that Smith remained on the case despite twice threatening to resign during the conversation.

The minutes of a January 3, 2013 "emergency" meeting of Southeast's board of directors further demonstrated Kimbro's and Smith's differences of opinion concerning trial strategy in the AP proceeding. The minutes indicate that Smith again recommended that Southeast concede the case because Southeast was formed "with the financial and human resources of [Southwest]," as the SW Trustee alleged. Rather than follow Smith's advice, however, Kimbro "wanted to defend the case . . . and put on witnesses and exhibits to prove and corroborate [that] no . . . assets were transferred." Therefore, according to the minutes, Kimbro explained that he wanted to file a motion to intervene in the AP trial, and Smith allegedly assured Kimbro that he would not object to the motion to intervene.

Grundy's affidavit claimed, however, that the appellees later reneged on Smith's promise to stay silent. He alleged that when the AP trial convened on January 15, 2013, Woodyard told the bankruptcy court that Southeast "was not in favor of the intervention and that [Kimbro's] complaint was not proper." Grundy further alleged that the chairman of the board, Steve Ward, subsequently attempted to terminate the appellees as Southeast's counsel over the allegedly reneged promise, but the bankruptcy judge "denied a motion for continuance and allowed [the appellees] to proceed with the [AP] trial anyway." According

4

to Grundy, Smith "then proceeded to stipulate to all 82 or so exhibits submitted by [counsel for the SW Trustee] without consulting with [Grundy] about their relevance or accuracy."

At the close of the AP trial, the bankruptcy judge announced that the SW Trustee was entitled to a judgment of $1.19 million against Southeast. The judge also announced that he was taking under advisement the issue of whether the SW Trustee was entitled to a constructive trust on Southeast's assets.[2]

The day after the AP trial concluded—and while the imposition of a constructive trust was still under advisement—Kimbro, representing that he was Southeast's attorney, and his brother, Greg, representing the cross-claimants in Pinewood's case in Miller County, mailed a letter informing the Miller County Circuit Court that Southeast and the cross-claimants (also entities controlled by members of the Stephens family) had settled the cross-claims and agreed to the entry of a consent judgment. The consent judgment, as it happened, purported to grant the cross-claimants a constructive trust and an equitable lien on Southeast's assets and on the assets of appellant A.K. Tennessee Irrevocable Trust.

B. The Southeast Bankruptcy

On February 27, 2012, while Pinewood's appeals from the AP settlement were ongoing, Southeast filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of Arkansas (Eastern District). The purpose of that petition was to allow Southeast to continue operating as it managed the ongoing legal proceedings in the AP in the Western District and Pinewood's lawsuit in Miller County.

---

[2]The bankruptcy judge ultimately denied the constructive trust.

5

On January 25, 2013—shortly after the judgment in the AP trial and Kimbro's attempt to obtain a consent judgment in Miller County—the SW Trustee took the uncommon step of requesting the appointment of a trustee in the Chapter 11 bankruptcy that Southeast had filed in the Eastern District.[3] According to the bankruptcy court, the motion was filed following Kimbro and Greg's attempt to obtain a constructive trust in Miller County and "the board [of trustees'] firing of [Southeast's] counsel, Smith, in the midst of the Southwest AP trial," among other things.

After a hearing in which Smith and other witnesses testified, the bankruptcy court granted the motion to appoint a trustee. In an order entered on July 9, 2013, the court summarized its findings as follows:

> The Court bases its findings of cause on the actions of Kimbro. Despite being an educated professional well-acquainted with bankruptcy (having been involved in multiple bankruptcy proceedings including his own), Kimbro has shown no respect for the bankruptcy process. He has been dishonest about who controls [Southeast] when in fact he controls [Southeast]. Kimbro's actions prove that he is not motivated by what is best for [Southeast] and its creditors, but that he is motivated by self-interest, which includes protecting himself from further liability and preserving his income stream from [Southeast]. Kimbro has taken actions on behalf of [Southeast] that have frustrated [Southeast's] efforts to reorganize and violated [Southeast's] fiduciary duties. Those actions . . . include: firing [Southeast's] counsel after opening statements in a trial against [Southeast], attempting to manipulate [Southeast] to allow him to intervene in the Southwest AP, filing multiple pleadings on behalf of [Southeast] without court approval, and, of utmost importance, agreeing to a consent

---

[3]In Chapter 11 cases, it is presumed that the management of the debtor-company will remain in control of the business because it is "generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate." *Tradex Corp. v. Morse*, 339 B.R. 823, 825–26 (D. Mass. 2006). In rare cases, a party in interest can request the appointment of a case trustee to assume control. *See* 11 U.S.C. § 1104(a) (2018). The bankruptcy court appoints a case trustee "for cause," such as "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor[.]" 11 U.S.C. § 1104(a)(1).

judgment against [Southeast] that awarded [the Miller County cross-claimants] a constructive trust on all of [Southeast's] assets.

Specifically regarding the efforts to fire Smith as Southeast's counsel, the court found that

Kimbro was attempting to remove Smith as [Southeast's] counsel by conjuring up malicious false accusations against Smith including: (1) that he would not defend the Southwest AP; (2) that he was cooperating with the Southwest Trustee's counsel [Thomas] Streetman in an effort to lose the Southwest AP trial; and (3) that he was not acting in the best interest of [Southeast] by not supporting Kimbro's efforts to personally intervene in the Southwest AP.

. . . .

This court finds that the [SW Trustee], her attorney, and Smith, as attorney for [Southeast], acted pursuant to their obligations as delineated in the Bankruptcy Code. That the other parties, fearing loss of control and/or payment, put their prior differences aside to create an almost operatic performance under oath during the hearings on the motions to appoint a trustee to benefit themselves by attacking Smith and Streetman who were proceeding under the dictates of the Bankruptcy Code.

Consequently, the court appointed a case trustee to control Southeast while the Chapter 11 bankruptcy was ongoing in the Eastern District.

C. Postjudgment Proceedings in the Southwest Bankruptcy

Following the appointment of the trustee, Kimbro returned to the Western District and filed a pro se motion for relief under Fed. R. Civ. P. 60(b) from the $1.19 million judgment that followed the AP trial. As he did in the Eastern District, he alleged that the judgment should be set aside because Smith colluded with counsel for the SW Trustee, Thomas Streetman, to bring about a judgment against Southeast. In particular, he alleged that Smith and Streetman colluded against him because (1) they lured him into signing a stipulation dismissing him as a party in the AP and then used that dismissal to preclude his intervention; (2) Smith did not lodge various procedural objections to the SW Trustee's

7

amended complaint; (3) the attorneys agreed at a pretrial conference to a quick trial date; (4) Smith did not argue that the AP was barred by the statute of limitations; (5) Smith stipulated to certain facts at trial; and (6) Smith and Streetman withheld information and presented false facts at trial. The SW Trustee responded by filing a motion for sanctions under Federal Bankruptcy Rule 9011 (federal bankruptcy's version of Rule 11), asserting that Kimbro's claims of collusion between Smith and Streetman were frivolous.

The bankruptcy court denied the Rule 60(b) motion and granted the SW Trustee's motion for Rule 9011 sanctions. Kimbro appealed that order, and on January 29, 2015, the United States Bankruptcy Appellate Panel for the Eighth Circuit affirmed. The appellate panel agreed that Kimbro's claims of collusion lacked merit, saying that the bankruptcy court did not clearly err when it found that Kimbro's allegations of collusion were "unfounded assumptions" and "blatant illogical fallacies."

### D. The Case at Bar

About a year after the Eighth Circuit's decision, the appellants filed the complaint in this case. Based on factual allegations that echoed the claims of collusion that Kimbro raised in federal court, the appellants asserted five claims against Smith–Akins: (1) breach of express and implied contract; (2) intentional misrepresentation; (3) fraud; (4) breach of standard of practice; and (5) breach of fiduciary duties. The complaint acknowledged that the appellants were not in direct privity of contract with the appellees but asserted that Smith's alleged misconduct in falsely promising that the appellees would not object to Kimbro's motion to intervene was fraud and intentional misrepresentation that warranted an exception to the direct-privity requirement under section 16-22-310(a)(1). The appellants also alleged that

8

an exception for third-party beneficiaries was warranted under section 16-22-310(a)(2)(A) because the appellees were "aware that the primary intent of the legal services [was] to benefit the [Trusts]."

The appellees moved for summary judgment.[4] As relevant here, they argued that they were immune from liability under section 16-22-310 because they were not in direct privity with the appellants, and neither exception to the requirement had been established. In particular, the appellees said there was no proof of "fraud or intentional misrepresentations" because the federal bankruptcy courts, in the opinions and orders recounted above, determined that they had acted appropriately. The appellants also could not prove that they met the exception for third-party beneficiaries because it "only applies if [the] attorney has identified in writing both to the client and the third party that the third party is entitled to rely on the attorney's professional services," and there is "no such writing" in this case.

The appellants responded that their proof established both exceptions to the direct-privity requirement in section 16-22-310. The appellees' alleged false promise not to object to Kimbro's motion to intervene, they said, constituted the kind of fraud and intentional misrepresentation that establishes the exception under section 16-22-310(a)(1). The appellants also claimed that the minutes of the January 3, 2013 board meeting as well as two documents that they executed concerning Southeast's defense in the Miller County case— a "Unanimous Consent and Resolution" and a "Joint Defense Agreement"—were all

---

[4]The federal bankruptcy court opinions that we cite here were among the exhibits attached to the motion.

9

"writings" that established the third-party-beneficiary exception under section 16-22-310(a)(2)(A).

On September 27, 2018, the circuit court entered a letter opinion that granted the motion for summary judgment. The court rejected the appellants' argument that they established one of the exceptions to the direct-privity requirement. The court found that the writings that the appellants offered did not establish that they were third-party beneficiaries of the appellees' representation of Southeast. The circuit court also found, in relevant part, that no fraud "was committed by the objection lodged by the Defendant Woodyard to the proposed intervention filed by Mr. Kimbro Stephens." Consequently, on October 8, 2018, the circuit court entered a judgment in favor of the appellees "because there is no privity between the [the appellants] and [the appellees] and this lack of an attorney-client-relationship bars [the appellants'] claims."

Shortly thereafter, on October 22, the appellants filed a motion to amend the court's order granting summary judgment and to grant a new trial in the circuit court. Asserting that the motion was filed "pursuant to Rule 52 and Rule 59 of the Arkansas Rules of Civil Procedure," the appellants requested that the circuit court amend its findings to rule that "a material question of fact remains regarding the issue of 'fraud' as it relates to an exception to the privity rule found in [section] 16-22-310(a)(1), and . . . as a result, a new trial should be ordered." In particular, the appellants insisted that the exhibits attached to their complaint proved that the appellees knowingly made a false representation that they would not object to Kimbro's motion to intervene in the AP, and the appellants justifiably relied on that alleged misrepresentation when they allowed the appellees to remain on the case until the

10

beginning of the AP trial when, apparently, it was too late to get a continuance to hire new counsel. They also claimed that they suffered damage because the $1.19 million adverse judgment in the AP led to the appointment of the trustee in Southeast's Chapter 11 bankruptcy and thereby the loss of their ownership interest in Southeast.

The circuit court did not enter an order disposing of the appellants' postjudgment motion; consequently, it was deemed denied by operation of law thirty days after it was filed, or November 22, 2018. *See* Ark. R. App. P.–Civil (4)(b)(1) (2020). The appellants filed a notice of appeal within thirty days of the "deemed denied" date, on December 19, 2018. *See id*.

The appellees thereafter filed a motion to dismiss the appeal while it was pending in this court arguing that we lacked jurisdiction because the notice of appeal was untimely. Specifically, the appellees argued that motions to amend the judgment under Ark. R. Civ. P. 52 and motions for new trial under Ark. R. Civ. P. 59 are not available after summary judgment. A motion under Rule 52, they claimed, is available only after bench trials. The appellees further argued that a motion for a new trial under Rule 59 is similarly intended to raise objections to the conduct or outcome of a *trial* and, therefore, cannot toll the time to file a notice of appeal from an order granting summary judgment. On April 17, 2019, we passed the motion to dismiss until the case was submitted.

## II. *Jurisdiction*

As they did in their motion to dismiss, the appellees argue that the appellants' postjudgment motion pursuant to Rule 52 and Rule 59 of the Arkansas Rules of Civil Procedure did not extend the time for filing the notice of appeal. Neither motion, they

11

say, is appropriate after a case ends in summary judgment. The appellees contend that, consequently, the appeal should be dismissed for lack of jurisdiction because the notice of appeal, which the appellants filed more than thirty days after the entry of summary judgment, is untimely. We deny the motion to dismiss.

A notice of appeal generally "shall be filed within thirty (30) days from the entry of the judgment, decree, or order appealed from." *See* Ark. R. App. P.–Civ. 4(a) (2020). The filing of a postjudgment motion, however, may extend that time. Rule (4)(b)(1) of the Arkansas Rules of Appellate Procedure–Civil provides that

> [u]pon the timely filing in the circuit court of a motion for judgment notwithstanding the verdict under Rule 50(b) of the Arkansas Rules of Civil Procedure, a motion to amend the court's findings of fact or to make additional findings under Rule 52(b), a motion for a new trial under Rule 59(a), *or any other motion to vacate, alter, or amend the judgment made no later than 10 days after entry of judgment, the time for filing a notice of appeal shall be extended for all parties.*

(Emphasis added.) The rule further provides that the starting date of the extension will be determined according to the date the circuit court acts—or chooses not to act—on the motion:

> The notice of appeal shall be filed within thirty (30) days from the entry of the order disposing of the last motion outstanding. However, if the circuit court neither grants nor denies the motion within thirty (30) days of its filing, the motion shall be deemed denied by operation of law as of the thirtieth day, and the notice of appeal shall be filed within thirty (30) days from that date.

Additionally, in determining whether a motion complies with Rule 4(b)(1), the appellate court "look[s] to content and substance—not to titles," *Muccio v. Hunt*, 2012 Ark. 416, at 3, and our supreme court has determined that a postjudgment motion that requests a new

trial on one of the grounds enumerated in Rule 59(a)—even if it follows summary judgment—extends the time for filing a notice of appeal. *See id*. at 4.

We agree that the appellants' postjudgment motion cannot be viewed as a motion for new trial that would extend the time for filing the notice of appeal under Rule 4(b)(1). Unlike the motion in *Muccio*, the postjudgment motion here does not appear to raise any of the grounds for new trial provided in Rule 59(a)(1). *See Virgil v. Morgan*, 2013 Ark. App. 675, at 5 (holding that a motion for new trial did not extend the time to appeal an interlocutory order granting summary judgment because the new-trial motion did not raise a proper ground for a new trial).

Rule 52(b), moreover, generally does not apply to orders granting summary judgment. *See Summers v. Byrd*, 2012 Ark. App. 171, at 8–9, 392 S.W.3d 374, 378–89.[5] "A court grants a motion for summary judgment when it determines that there are no genuine issues of material fact to be litigated, and therefore, that the party is entitled to judgment as a matter of law." *Id*. "By definition," therefore, "the action was never 'tried upon the facts' to a jury or a court." *Id*. Rule 52(b), in contrast, "applies to trials where the trial court made findings of fact, and the movant requests the trial court to amend them." *Routh Wrecker Serv., Inc. v. Washington*, 335 Ark. 232, 237, 980 S.W.2d 240, 242 (1998). Rule 59(a) and Rule 52(b) both make it clear, moreover, that "the trials contemplated are bench trials." *Id*. Accordingly, it does not appear that the appellants' postjudgment motion successfully invoked either Rule 59(a) or Rule 52(b).

---

[5]There is an exception to this general rule for cases involving claims under the Arkansas Civil Rights Act. *See Fennell v. City of Pine Bluff*, 2016 Ark. App. 275, at 6, 492 S.W.3d 887, 891.

Even so, we hold that the time to file the notice of appeal was extended in this case. The availability of an extension is not limited to the postjudgment motions listed in the rule but extends to "any other motion to vacate, alter, or amend the judgment made no later than 10 days after entry of judgment." Ark. R. App. P.–Civ. (4)(b)(1). The appellants, insisting that genuine issues of material fact remained, effectively requested that the circuit court vacate its order granting summary judgment and proceed with a trial. They did so, moreover, within ten days of the circuit court's order. Accordingly, we deny the motion to dismiss and turn to the merits of the appeal.[6]

III. *The Merits*

A. Standard of Review

A circuit court may grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Blevins v. Hudson*, 2016 Ark. 150, at 3, 489 S.W.3d 165, 168. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* at 4, 489 S.W.3d at 168. On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Richardson v. Union Pac. R.R. Co.*, 2011 Ark. App. 562, at 2, 386 S.W.3d 77, 79. In doing so, this court views the evidence in the light most favorable to the party against whom the motion was

---

[6]Rule 6 of the Arkansas Rules of Civil Procedure provides that "when the period of time prescribed or allowed is less than fourteen (14) days, intermediate Saturdays, Sundays, or legal holidays shall be excluded from the computation."

14

filed resolving all doubts and inferences against the moving party. *Id*. The burden is not on the moving party to demonstrate that every fact is undisputed but to show that reasonable minds could not differ as to the conclusion to be drawn from them. *Blevins*, 2016 Ark. 150, at 4, 489 S.W.3d at 168.

## B. Fraud or Intentional Misrepresentation

The appellants first argue that their complaint and exhibits demonstrate that they met the exception to the direct-privity requirement for fraud or intentional misrepresentation. They assert that the appellees made a false representation of material fact when they told those in control of Southeast that they would not object to Kimbro's motion to intervene in the Southwest AP. The appellants further contend that the appellees were aware that their continued employment as Southeast's counsel hinged on their alleged promises not to object, and the appellants justifiably relied on those promises when they did not terminate the appellees' representation prior to the AP trial. Finally, the appellants claim that they suffered damages because Smith's alleged poor performance in the AP started a chain of events that led to "the appointment of a Chapter 11 Trustee [in the Eastern District], advocated by Smith, directly leading to the [the appellants'] injury by the loss of their ownership interest in [Southeast]." We affirm.[7]

As relevant here, the attorney-immunity statute, Arkansas Code Annotated section 16–22–310(a), provides that

---

[7]As the appellees observe in their brief, the appellants appear to have abandoned their claim that they were third-party beneficiaries as provided in section 16–22–310(a)(2). Accordingly, we confine our discussion to the merits of the appellants' claim under section 16–22–310(a)(1).

[n]o person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership or corporation, except for:

(1) Acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations.

Privity of contract is defined as "that connection or relationship which exists between two or more contracting parties," and our supreme court has "narrowly construed the privity requirement to require direct privity between the plaintiff and the attorney or entity to be held liable for legal malpractice." *Giles v. Harrington, Miller, Neilhouse & Krug*, 362 Ark. 338, 347, 208 S.W.3d 197, 203 (2005). The supreme court has also observed that the language in the statute "is precise and clear and reveals that the contract contemplated by the statute relates to a contract for professional services performed by the attorney and the client." *Id.*

The appellants do not appear to dispute that only Southeast was in direct privity of contract with the appellees. The bankruptcy court, after all, appointed the appellees to represent only Southeast. They assert, however, that the appellees cannot be held immune because of their alleged fraudulent promise not to object to Kimbro's motion to intervene in the AP. We disagree.

In order to invoke the fraud exception to the contractual-privity requirement in section 16-22-310, a plaintiff must show (1) a false representation of material fact; (2) knowledge that the misrepresentation is false or that there is insufficient evidence upon which to make that representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as

16

a result of that reliance. *See Calandro v. Parkerson*, 327 Ark. 131, 137, 936 S.W.2d 755, 759 (1997). Even assuming that the appellants offered proof of the first three elements of fraud, they have not raised a genuine issue of material fact regarding justifiable reliance and causation.

No facts support the claim that the appellants justifiably relied on the alleged misrepresentation when they decided (they claim) not to terminate the appellees' representation before the AP trial. The appellants never had the unfettered ability to hire—or fire—the appellees as counsel for Southeast—particularly on the basis that the appellees interfered with Kimbro's desire to personally intervene in the AP. Indeed, the appellees represented only the interests of Southeast's estate in bankruptcy, not Southeast's principals or management, and not the appellants. *See In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996). Consequently, Southeast could not employ the appellees without the bankruptcy court's approval, *see* 11 U.S.C § 327(a), and, as the Eastern District determined, Southeast did not have "an unbridled right to . . . fire counsel as it chooses if that decision is based on the personal interests of [Southeast's] principals instead of the best interests of the estate." Therefore, the circuit court did not err by granting the motion for summary judgment because the appellants could not justifiably rely on the appellees' alleged misrepresentation that they would not object to the motion to intervene.

The appellants' fraud claim also fails because they do not offer facts showing that the alleged misrepresentation caused the ultimate injury that they claim—loss of their ownership interest in Southeast upon the appointment of the Chapter 11 trustee. The federal courts, as an initial matter, soundly rejected as "unfounded assumptions" and "blatant illogical

17

fallacies" Kimbro's assertions that the AP judgment against Southeast resulted from any "collusion" or other inappropriate action by Smith or the SW Trustee's counsel. Even so, the adverse outcome in the AP—or the appellees' continued representation thereafter—had *nothing* to do with the appointment of the Chapter 11 trustee in the Eastern District case. Rather, as the Eastern District made clear, a trustee was appointed because of the fraudulent actions of Kimbro himself, including

> firing [Southeast's] counsel after opening statements in a trial against [Southeast], attempting to manipulate [Southeast] to allow him to intervene in the Southwest AP, filing multiple pleadings on behalf of [Southeast] without court approval, and, of utmost importance, agreeing to a consent judgment against [Southeast] that awarded [the Miller County cross-claimants] a constructive trust on all of [Southeast's] assets.

We hold, therefore, that the circuit court did not err by granting the appellees' motion for summary judgment.

## C. Other Intentional Torts

The appellants next argue that the circuit court erred by granting the motion for summary judgment because the allegations in their complaint made a prima facie case that the appellees committed other intentional torts, including fraud in the inducement, abuse of process, and conversion, that warranted applying the exception in section 16-22-310(a)(1). We disagree.

Briefly, section 16-22-310(a)(1) limits the privity exception to "acts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentation" and, by its plain language, does not include other intentional torts. Additionally, while a federal bankruptcy court has held that language to include intentional torts other than fraud and misrepresentation, *see Almand v. Benton Cnty.*, 145 B.R. 608, 617 (W.D. Ark. 1992), our

18

supreme court still has not squarely addressed that question. *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, at 7–8, 372 S.W.3d 324, 331 (observing that *Almand* held that the exception did *not* apply to intentional torts and assumed for sake of discussion that an attorney could be liable for abuse of process); *Wiseman v. Batchlor*, 315 Ark. 85, 90, 864 S.W.2d 248, 250–51 (1993) (rejecting claim of constructive fraud because, citing *Almand*, "[t]he exception appears to be one for intentional actions"); *see also First Ark. Bank & Tr., Trustee v. Gill, Elrod, Ragon, Owen, & Sherman, P.A.*, 2013 Ark. 159, at 12–13, 427 S.W.3d 47, 55 (Baker, J., dissenting) (citing *Almand* and *Wiseman* to dispute the majority's holding that constructive fraud warrants the exception).

Moreover, even if we assume that section 16-22-310(a)(1) includes other intentional torts, the appellants cannot demonstrate any causal connection between the alleged additional torts and the injury they claim—the loss of their ownership interest when the Eastern District appointed the Chapter 11 trustee. As we recounted above, the bankruptcy court made it abundantly clear that Kimbro's fraudulent conduct—and nothing else—warranted the appointment. Accordingly, we affirm.

## IV. *Conclusion*

We deny the appellees' motion to dismiss because the appellants filed a timely postjudgment motion that extended the time to file the notice of appeal under Ark. R. App. P.–Civ. 4(b)(1). On the merits, we affirm the order granting the appellees' motion for summary judgment. The appellees were immune from liability under section 16-22-310(a) because they were not in direct privity of contract with the appellants, and the appellants

failed to offer proof that there was fraud, misrepresentation, or an intentional tort that warranted the exception provided in section 16–22–310(a)(1).

Affirmed.

KLAPPENBACH and VAUGHT, JJ., agree.

*Jurist Law Group, PLLC*, by: *J. Shane Cox* and *D. Kimbro Stephens*, for appellants.

*Friday, Eldredge & Clark, LLP*, by: *Donald H. Bacon* and *Martin A. Kasten*, for appellees.